UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

TB HOLDING COMPANY LLC, a
Colorado limited liability company,


Plaintiff,

v.

J&S SIDING, an Idaho limited
liability company,

Defendant.

Case No. 4:22-cv-00307-BLW

**MEMORANDUM DECISION
AND ORDER**

## INTRODUCTION

Before the Court is TB Holding's motion for partial summary judgment
(Dkt. 42). TB Holding moves for summary judgment on Count II of the Complaint,
which alleges infringement of U.S. Patent No. 9,732,529. J&S Siding opposes the
motion. The Court held a hearing in January 2024 and the motion is ripe for
review. For the reasons discussed below, the Court will deny the motion.

## BACKGROUND

### 1.  The '529 Patent

This case involves three separate patents, all held by TB Holding, related to
Ted Baum's invention of a machine attachment that creates simulated log siding.

Two patents cover the machine attachment (U.S. Patent Nos. 9,283,604 and

D602,612) and one patent covers the log siding itself (U.S. Patent No. 9,283,529).

The only patent relevant to this motion is the '529 patent.

The '529 patent covers the simulated log siding panel—regardless of how it

is made. The panels are created from sheet metal but are designed to look like log-

siding. *Patent*, Pl. Ex. 1 at 14, Dkt. 42-4. To create this effect, the siding has

permanent bends along the length of the panel that create the appearance of hew

lines. *Id.*; *Fig. 1* (the bends are the lines labeled as 26). Hew lines are the lines on

natural siding that are created when bark is removed from the wood and the log is

transformed into a construction log. *Patent*, Pl. Ex. 1 at 14, Dkt. 42-4.



The position of each bend varies as the bends move across the length of the

panel. *Id*. The bends are only on the curved intermediate section of the panel. *Id*;

*Fig. 2* (this section is labeled as 23 in Figures 1 and 2)*. The "offset wall portions"

are the two small sections of panel connecting the curved, intermediate portion

with the flat section of the panel that lays against the wall. *See Patent*, Pl. Ex. 1 at

14, Dkt. 42-4; *Fig. 2* (labeled as 24 and 25). These offset wall portions give the

intermediate section of the panel its curved shape. *Id.* The curve in the panel

extends outward away from the wall and creates a convex relief mimicking the

semi-cylindrical shape of a natural log. *Id.* The flat, or edge, sections (labeled as 22

in Figure 2) are then used to mount each panel to the wall. When multiple panels

are mounted onto an exterior wall, it creates the appearance of log-siding. *See Figs.*

*3 & 5.*



FIG.3                    FIG.5

### 2.  The Dispute

TB Holding alleges that all siding produced by J&S Siding infringes the

'529 patent. J&S is a siding company based in Idaho Falls that is owned by Joe and

Stephanie Walrath—the "J" and "S" of J&S. *Response* at 1, Dkt. 49; *Statement of*

*Undisputed Facts* at ¶ 3. Dkt. 42-2. In 2009, before any patent was issued, Mr. Baum sold Mr. Walrath a log siding machine. *Id.* at 10. Years later, TB Holding learned that J&S was creating a second machine attachment to create log siding. *Id.* at ¶ 19, 23.[1] In July 2022, TB Holding filed its Complaint against J&S alleging infringement of all three patents. *Complaint*, Dkt. 1. J&S filed an amended answer denying the allegations and the parties proceeded to discovery. Discovery was initially set to close in June 2023, however, that deadline was ultimately extended until February 2024. *Order*, Dkt. 40.

In October 2023, before the close of discovery, TB Holding filed this motion for partial summary judgment on Count II arguing that all log siding produced by J&S infringes on the '529 patent. J&S denies that any siding infringes and argues that—for several reasons—summary judgment is inappropriate. It also claims several unpled affirmative defenses preclude summary judgment.

## LEGAL STANDARD

---

[1] J&S objects to some the evidence cited in support of TB Holding's statement of undisputed facts. *See e.g.*, *Response to Statement of Facts* at 14, Dkt. 42-2. TB Holding, in turn, objects to J&S's statement of disputed facts as not complying with local rules. *Reply* at 10, Dkt. 51. Local Rule 7.1(c)(2) requires the non-moving party responding to a summary judgment motion "to file a separate statement, not to exceed ten (10) pages, of all material facts which the responding party contends are in dispute." L.R. 7.1(c)(10). J&S's response and statement of facts exceeds this 10-page limit and includes responses to each of TB Holding's facts in addition to a separate statement of facts. *Response to Statement of Facts* at 14, Dkt. 42-2. The Court will disregard pages 1–29 of J&S's statement of facts which do not comply with this rule.

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). There must be a genuine dispute as to any *material* fact—that is, a fact "that may affect the outcome of the case." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to a material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). In evaluating whether the moving party has met this burden, the Court must view the evidence in the light most favorable to the non-moving party and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).

Once the moving party has met its burden, the non-moving party carries the burden to present evidence showing there is a genuine issue for trial. *Celotex*, 477

U.S. at 323. The non-moving party must go beyond the pleadings and show

through "affidavits, or by the depositions, answers to interrogatories, or admissions

on file" that a genuine dispute of material fact exists. *Id.* at 324.

## ANALYSIS

### A.    Preliminary Matters

Before turning to the substance of the motion, the Court will first address

two arguments raised by J&S that it claims require denying TB Holding's motion

for summary judgment.

First, J&S argues that TB Holding's Complaint only alleges infringement

based upon the existence of a second "pirated" attachment, not literal infringement.

The Court disagrees. The Complaint alleges that J&S "manufactures and sells in

Idaho elongated metal simulated log siding panels. . . without the permission of"

TB Holding. *Complaint* at ¶ 124, Dkt. 1. This provides sufficient notice that Count

II was not limited to siding created with a second attachment but was a broad

literal infringement claim.

Second, J&S argues summary judgment is inappropriate because the Court

has not held a *Markman* hearing or construed the claim terms. Often, including in

this district, patent cases are governed by local patent rules which provide a

detailed procedure designed to address claim construction early in the case.

Although the Complaint alleges patent infringement, this case has not been governed by the Local Patent Rules because the parties initially indicated the scope and meaning of the patents were not in dispute. *Scheduling Order* at 1–2, Dkt. 27.

J&S now argues that because the parties have not adjudicated claim construction, the Court must deny summary judgment. Not so. "*Markman* does not require a district court to follow any particular procedure in conducting claim construction. It merely holds that claim construction is the province of the court not a jury." *Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1359 (Fed. Cir. 2001). Indeed, a "district court has considerable latitude in determining when to resolve issues of claim construction." *CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005) (citing *Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002)). It is not unusual for a court to resolve disputes over claim construction at summary judgment when a new dispute arises or, as here, where the parties initially expressed a *Markman* hearing was not necessary. *See e.g.*, *Meritor Transmission Corp. v. Eaton Corp.*, No. 1:04CV178, 2006 WL 8455915, at *1 (W.D.N.C. Feb. 1, 2006) ("In the event that claim construction is required, it will be done without conducting a *Markman* hearing."). As such, neither argument requires denying summary judgment.

**B.     Availability of Unpled Affirmative Defenses**

J&S also argues that two unpled affirmative defenses prevent summary judgment: implied license and repair.[2] "Generally, an affirmative defense that is not asserted in an answer to the complaint is waived or forfeited by the defendant." *KST Data, Inc. v. DXC Tech. Co.*, 980 F.3d 709, 714 (9th Cir. 2020). Both repair and implied license are affirmative defenses that J&S should have pled in its answer. *See Carborundrum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 878 (Fed. Cir. 1995) (implied license is an affirmative defense); *Jazz Photo Corp. v. Int'l Trade Com'n*, 264 F.3d 1094, 1102 (Fed. Cir. 2001) (repair is an affirmative defense).[3] The Ninth Circuit, however, has "liberalized the requirement that defendants must raise affirmative defenses in their initial pleadings." *Magana v. Com. of the N. Mar. I.*, 107 F.3d 1436, 1446 (9th Cir. 1997). "[D]efendants may raise an affirmative defense for the first time [at] summary judgment only if the

---

[2] J&S briefly argues that although it did not specifically plead either affirmative defense, it did plead a host of equitable defenses including waiver, laches, acquiescence, and estoppel. At the outset, the Court finds that pleading some equitable defenses does not provide notice of a party's intent to assert other equitable defenses. *Simmons v. Navajo County*, 609 F.3d 1011, 1023 (9th Cir. 2010) (*overruled on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc)) ("The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense.").

[3] There is some dispute whether repair is a defense to infringement of the '529 patent. *See Motion* at 14, Dkt. 42; *Response* at 14; Dkt. 49. The Court finds that the doctrine of repair may have a narrow application to the infringement claim at issue, so it will address the defense.

delay does not prejudice the plaintiff." *Id.* (citing *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984)).

Allowing a defendant to raise an unpled affirmative defense has the practical effect of amending the answer to include that defense. Often, as here, motions for summary judgment are brought after the expiration of the deadline to amend pleadings set by the Court's scheduling order. Yet, "none of the Ninth Circuit cases allowing a defendant to raise an unpled or inadequately pled affirmative defense for the first time [at] summary judgment evaluated whether the defendant should be required to meet Federal Rule of Civil Procedure 16(b)'s 'good cause' standard if a scheduling order is in place." *Hernandez v. Creative Concepts, Inc.*, 295 F.R.D. 500, 505 (D. Nev. 2013).

This Court, however, has previously concluded that "if a defendant seeks to assert new affirmative defenses in a motion for summary judgment after the scheduling-order deadline for amending pleadings has passed, then Rule 16(b)'s good-cause standard applies." *Sadid v. Vailas*, 943 F. Supp. 2d 1125, 1140 (D. Idaho 2013) (citing *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715–18 (8th Cir. 2008)). Importantly, Rules 15 and 16 require the Court to consider factors beyond the prejudice to the plaintiff including, mainly, the diligence of the party seeking to amend. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th

Cir. 1992). The Court sees no reason to disregard these considerations simply because the defense is raised at summary judgment rather than in a motion to amend. Accordingly, J&S must meet Rule 16(b)'s good cause standard in addition to showing a lack of prejudice to TB Holding.

### 1. Good Cause

A defendant must "first show good cause for amendment under Rule 16, then if good cause be shown, the [defendant] must demonstrate that amendment was proper under Rule 15." *Id*. The "good cause" standard focuses primarily on the "diligence of the party seeking amendment." *Id*. Here, J&S cannot meet Rule 16's good cause standard.

J&S seeks to add an affirmative defense over a year after it filed an amended answer and nine months after the expiration of the deadline to amend pleadings. *See Am. Answer*, Dkt. 17; *Scheduling Order*, Dkt. 27. J&S was aware of the facts in support of its implied license defense since at least August 2023 when it filed its response to Interrogatory No. 21. Pl. Ex. 11, Dkt. 42-14. It did not move to amend. When TB Holding informed J&S that it risked waiver of any unpled affirmative defenses, J&S still did not move to amend. *See* Pl.'s Supp. Ex. B, Dkt. 62-2. This failure to even attempt to amend the answer is not compatible with diligence. *Cf. Arteaga v. United Parcel Service*, No. 2:21-cv-06011-VAP-ASx, 2023 WL

2628688, at *3 (C.D. Cal. Jan. 3, 2023) (finding good cause where defendant moved to amend six days after receiving notice from plaintiff of disagreement).

Even with respect to its repair defense, the Court is not persuaded that J&S has shown the requisite diligence. Counsel for J&S only learned the second set of discs were actually used by J&S, which it claims gave rise to its repair defense, in September 2023 before TB Holding's deposition of Ms. Walrath. *Response* at 16, Dkt. 49. It, again, did not move to amend. The burden is on the party seeking to amend to demonstrate that they were diligent in pursuing their case. Part of that diligence requires gathering facts from clients and, here, it appears counsel failed to do so. *See Bonneau v. SAP America*, No. C 03-5516 PJH, 2004 WL 2714406, at *1 (N.D. Cal. Nov. 29, 2004) (denying leave to amend where plaintiff and "attorneys had ample opportunity to discover the relevant facts concerning the potential. . . claim, especially since [the plaintiff] himself had personal knowledge of that information.").

### 2.  Prejudice to the Plaintiff

J&S also cannot meet the more liberal standard articulated in *Magana* because TB Holding will suffer a prejudice from its delay in raising these

affirmative defenses.[4] "The failure to raise a defense is prejudicial if the party against whom the issue is raised may have tried its case differently or advanced distinct legal arguments against the issue." *Heejoon Chung v. U.S. Bank, N.A.*, 250 F. Supp. 3d 658, 675 (D. Haw. 2017). Neither affirmative defense was raised until over a year after the amended answer was filed in October 2022. *See Jorst v. D'Ambrosio Bros. Inv. Co.*, No. C 00-03646-CRB, 2001 WL 969039, at *9 (N.D. Cal. Aug. 13, 2001) ("[P]laintiffs have suffered prejudice, as the parties have proceeded through almost a year of litigation, including the depositions of multiple witnesses."). TB Holding explains that additional time-intensive discovery would be required if J&S is allowed to proceed with its affirmative defenses. *See CDM Holding Grp., LLC v. Tidal Com. Inc.*, No. SACV 21-01204-CJC (DFMx), 2023 WL 4317359, at *7 (C.D. Cal. May 19, 2023) (requiring plaintiff to conduct new discovery constituted prejudice).

That said, some of this prejudice is mitigated because TB Holding had the

---

[4] Courts in this Circuit are divided on whether the burden is on the plaintiff to show prejudice or the defendant to show no prejudice. *See e.g.*, *Haysbert v. Navient Sols., Inc.*, No. CV 14-4144 PSG (Ex), 2016 WL 890297, at * 13 n. 15 (C.D. Cal. Mar. 8, 2016) ("Defendant does not explain why the late inclusion of the affirmative defense is not prejudicial to Plaintiff."); *Martorell v. Bagchi*, No. 3:19-cv-00523-MMD-CLB, 2021 WL 3824661, at *5 (D. Nev. Aug. 25, 2021) ("Plaintiff did not explain how he was prejudiced by this delay. . ."). It seems that, as the defendant is the party who has failed to comply with the requirements of Rule 8, the onus is on it, as the non-complaint party, to show a lack of prejudice.

opportunity to address the merits of the affirmative defenses in the supplemental briefing ordered by the Court. *See Moofly Prods., LLC v. Favila*, 682 Fed. Appx. 584, 586 (9th Cir. 2014) (finding no abuse of discretion where the district court dismissed plaintiffs' claims based on unpled affirmative defense because plaintiffs had "ample opportunity to brief" the affirmative defenses). Additionally, TB Holding communicated with counsel for J&S about some of the unpled defenses and was aware J&S may raise them. *Int'l Longshore and Warehouse Union v. ICTSI Oregon, Inc.*, 863 F.3d 1178, 1187 n. 6 (9th Cir. 2017) ("rejecting waiver argument where plaintiff 'knew [the affirmative defense] was a potential issue throughout most of the discovery process.'" (quoting *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 861 (5th Cir. 2000))). Those communications, however, do not indicate TB Holding knew which affirmative defenses J&S would claim at summary judgment. J&S references several defenses in these communications including implied license and patent exhaustion (which it is no longer claiming) and did not reference others it now claims (such as equitable implied license). Pl. Ex. 11, Dkt. 42-14; Pl.'s Supp. Ex. B, Dkt. 62-2. Perhaps, more importantly those communications focus on whether those unpled defenses were waived, and not the underlying substance. *Id.* The circumstances that may mitigate the prejudice to TB Holding, ultimately, do not outweigh the prejudice caused by the delay. As such,

both unpled affirmative defenses are waived.[5]

## C.    Literal Infringement

TB Holding alleges J&S literally infringed the '529 patent by, without authority, making, using, selling, or offering to sell the accused siding pursuant to 35 U.S.C. § 271(a). "Determining whether a patent claim has been infringed involves two steps: (1) claim construction to determine the scope of the claims, followed by (2) [a] determination whether the properly construed claim encompasses the accused [product]." *Bai v. L&L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998). Direct infringement is a strict-liability offense, so the mental state of the defendant is irrelevant. *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 761 n.2 (2011). The Court's analysis will proceed in two steps.

### 1.  Claim Construction

"The purpose of claim construction is to 'determine[e] the meaning and scope of the patent claims asserted to be infringed.'" *O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en

---

[5] To the extent J&S still maintains a patent exhaustion defense or any other affirmative defense it is considered waived based on J&S's statements at the hearing. The proper method to assert any additional affirmative defense is through a motion to amend.

banc)). Claim construction is a question of law, meaning when parties raise a dispute about the meaning of scope of a claim, the Court, not a jury, must resolve that dispute. *Id.* "Where. . . the parties do not dispute the scope of any particular claim term, however, claim construction is not necessary." *Plastipak Packaging, Inc. v. Premium Waters, Inc.*, 55 F.4th 1332, 1340 (Fed. Cir. 2022).

"Words of a claim are generally given their ordinary and customary meaning, which is the meaning a term would have to a person of ordinary skill in the art after reviewing the intrinsic record at the time of the invention." *O2 Micro Intern. Ltd.*, 521 F.3d at 1360 (internal citations omitted). While the meaning of a claim as understood by a person of ordinary skill is often not "readily apparent," "[i]n some cases, the ordinary meaning of claim language. . . may be readily apparent even to lay judges." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc). In these cases, claim construction "involves little more than the application of the widely accepted meaning of commonly understood words." *Id.*

TB Holding argues this is one such case. J&S, in contrast, does "not agree with [TB Holding's] assertion that all claim terms should have their plain and ordinary meaning." *Response* at 7, Dkt. 49. J&S neither states which terms it disputes nor provides any alternative constructions. Instead, it argues some claim

terms are unclear. It argues, for example, it is unclear "[h]ow close the curve needs to be to the edge of the curvature," "what 'relative to the margins means,'" and "what 'offset wall portions' means." *See Response* at 11–13, Dkt. 49. These conclusory statements are insufficient to avoid summary judgment because "[m]ere disagreement over the meaning of a term does not necessarily give rise to a genuine issue of material fact." *Lantech, Inc. v. Keip Mach. Co.*, 32 F.3d 542, 545 (Fed. Cir. 1994); *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1112 (Fed. Cir. 2000) ("A party may not overcome a grant of summary judgment by merely offering conclusory statements."). As a result, the Court will give the claim terms their plain and ordinary meaning.

### 2. Infringement

"To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). "If even one limitation is missing or not met as claimed, there is not literal infringement." *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998). Whether a product infringes is a question of fact and "[s]ummary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device." *PC Connector*

*Sols. LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005). Here, the Court cannot conclude that no reasonable jury could find non-infringement.

The '529 patent contains seven claims. Claim 1 is the sole independent claim. All other claims are dependent claims, meaning those claims are only infringed if the claim upon which they depend is also infringed.[6] *Autogiro Co. of America v. United States*, 384 F.2d 391, 408 (Ct. Cl. 1967). TB Holding has divided Claim 1 into three claim elements: 1a, 1b, and 1c. For purposes of this Order, only Claim 1c is relevant. It recites: "offset wall portions extending rearwardly from the opposite margins of the intermediate portion to project the intermediate portion forward and give relief to the intermediate portion." *Patent*, Pl.'s Ex. 1 at 19, Dkt. 42-4. This claim element focuses on the curve of the panel, which is further described in the specification: "Due to the forward projection of the curved portion 23 because of the offsetting wall portions 24 and 25, the curved portion 23 appears relieved on the exterior of the building, thereby contributing to the recognition of and focus on the curved portion 23 as simulating a construction log." *Id.* at 16; *see also Fig. 2*.

TB Holding argues that all siding produced by J&S infringes the '529 patent

_____

[6] Claims 2, 3, 5, 6, and 7 are dependent on Claim 1. Claim 4 is dependent on Claim 3, which is itself a dependent claim. *See Patent*, Pl. Ex. 1 at 19, Dkt. 42-4.

and, necessarily, contains the curved section of panel described in Claim 1c. *Motion* at 1, 10, Dkt. 42. J&S argues that its siding does not contain all claim elements. It, separately, argues that TB Holding has failed to properly identify an accused product because J&S produces "at least two types" of siding. *Response* at 8, Dkt. 49. J&S, however, does not identify, describe, or clarify the types of siding it produces. This conclusory statement, alone, is not enough to defeat summary judgment.

Nonetheless counsel's statements during the hearing on this motion confirm that J&S produces at least two types of siding. During a discussion of J&S's repair defense, counsel for TB Holding explained that J&S produced a type of siding called "grizzly board" that may not infringe the '529 patent. From what the Court can tell, grizzly board is a type of siding produced by J&S that is flat—or at least flatter than other types of siding J&S produces. In its briefing, however, TB Holding indicates the images of siding submitted in support of its motion are "representative of all J&S log siding." *Statement of Undisputed Facts* at ¶ 44, Dkt. 42-2. Obviously, the discussion of grizzly board conflicts with this statement.

This conflict produces a factual dispute that precludes summary judgment. TB Holding defines the accused product as *all* siding. Yet, it appears undisputed that J&S produces "at least two" types of siding with different characteristics.

Counsel has suggested that at least some of J&S's siding is flat, which raises a question of whether all of J&S's siding meets the limitations set forth in Claim 1c. It is difficult to conclude anything more based on the record because TB Holding did not separately address the different types of siding and J&S did not provide any additional information on the types of siding it produces. Put simply, the Court cannot conclude that *all* siding produced by J&S infringes the '529 patent, when it appears *some* siding may not. Accordingly, TB Holding's motion for summary judgment is denied.

## ORDER

**IT IS ORDERED that** Plaintiff's Motion for Partial Summary Judgment (Dkt. 42) is **DENIED.**

DATED: April 5, 2024

B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 19**