UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TB HOLDING COMPANY, LLC, a Colorado limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>J&S SIDING COMPANY, an Idaho limited liability company,<br><br>Defendant. | Case No. 4:22-cv-00307-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is TB Holding Company's motion for attorneys' fees (Dkt. 99) for the reasons described below, the Court will grant the motion.

## BACKGROUND

Both the Court and the parties are familiar with the facts underlying this dispute. In short, TB Holding severed several interrogatories and requests for production on J&S Siding Company seeking revenue and address information for all its log siding projects. J&S claimed—and continues to claim—it has complied with all discovery requests. Nonetheless, through third-party discovery, TB Holding discovered the addresses of two projects not included in J&S's discovery

responses. After several attempts by the parties to resolve this dispute without a motion, the Court permitted TB Holding to file a motion to compel which the Court granted.[1] TB Holding now moves for the fees and costs incurred in bringing the motion to compel. J&S opposes the motion.

## LEGAL STANDARD

When a motion to compel has been granted, the Court must, after an opportunity to be heard, require the party whose conduct resulted in the motion, or the attorney advising the conduct, or both, to pay the reasonable attorneys' fees of the movant. Fed. R. Civ. P. 37(a)(5)(A). Awarding attorneys' fees is mandatory under Rule 37 unless one of three exceptions apply: (i) the moving party filed the motion before making a good faith effort to obtain disclosure without court intervention; (ii) the nondisclosure was substantially justified; (iii) or other circumstances make the award of fees unjust. Fed. R. Civ. P. 37(a)(5)(A)(i)–(ii). "The awarding of attorney fees under Rule 37 involves a procedural issue not unique to patent law," so Ninth Circuit law applies. *Pickholtz v. Rainbow*

---

[1] J&S states that the Court granted TB Holding permission to file its motion to compel before the deadline set by the Court's law clerk to comply with the discovery requests. *See Response* at 12, Dkt. 111. For the sake of clarity, the Court will note that the deadline was noon on February 2, 2024. J&S failed to meet that deadline and the Court granted TB Holding permission to file the motion to compel only after the expiration of that deadline.

*Technologies*, 284 F.3d 1365, 1371 (Fed. Cir. 2002).

If the moving party is indeed entitled to fees, the Court must determine the amount to which it is entitled. In the Ninth Circuit, courts use the two-step "lodestar method" to calculate a reasonable fee. *Morales v. City of San Rafael*, 96 F.3d 359, 363–34 (9th Cir. 1996). The Court first evaluates whether the rate charged and the hours expended by the attorneys were reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The reasonable hourly rate is then multiplied by the reasonable number of hours to establish a lodestar figure. *Id.* This lodestar figure is a presumptively reasonable fee but may be adjusted based on a variety of factors.[2] *Gonzales v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Such adjustments, however, are appropriate "[o]nly in rare instances." *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994).

## ANALYSIS

---

[2] Courts are instructed to consider the factors outlined in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), that are "not already subsumed in the lodestar calculation." *Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996). The *Kerr* factors are as follows: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Id.* at 363 n.8.

### A.    Entitlement to Attorneys' Fees

TB Holding claims it is entitled to attorneys' fees under Rule 37. As the party who prevailed on the motion to compel, TB Holding is entitled to its reasonable fees unless J&S can establish that one of the Rule 37(a)(5)(A) exceptions is applicable. *See* Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii). J&S argues that all three exceptions apply here.

First, J&S argues that TB Holding did not attempt to resolve the discovery issues in good faith before filing the motion to compel. *See* Fed. R. Civ. P. 37(a)(5)(A)(i). The Court disagrees. TB Holding, at a minimum, raised issues with both the address information and the invoices that were the subject of the motion to compel at an informal conference with the Court's clerk. After additional back and forth between the parties and the Court's clerk, TB Holding indicated in late December 2023 that no additional Court intervention was required at that time because J&S had produced additional material. J&S argues that with this statement, the "slate was cleaned" and TB Holding was required to re-comply with this Court's discovery dispute procedures when it raised this dispute again in January 2024. *Response* at 7, Dkt. 111. This statement did not reset some sort of meet and confer clock as J&S suggests and TB Holding had already met its meet and confer when the dispute was raised again in January 2024. As such, the Rule

37(a)(5)(A)(i) exception does not apply.

Second, J&S argues that its responses were substantially justified because the missing information was not in J&S's possession, custody, or control. *See* Fed. R. Civ. P. 37(a)(5)(A)(ii). A position is "substantially justified" if "reasonable people could differ as to whether the party requested [to respond] must comply." *Reygo Pac. Corp. v. Johnston Pump Co.*, 680 F.2d 647, 648 (9th Cir. 1982). J&S argues its responses were substantially justified because it completely and fully complied with TB Holding's requests such that no discovery violation occurred.

This position rings somewhat hollow as it appears J&S still has not provided full and complete responses to some of the at-issue interrogatories. *See Motion* at 5–10, Dkt. 99. Importantly, it appears J&S has had access to the information sought in these interrogatories—particularly the address information—for the duration of this dispute. Joe Walrath, one of the owners and founders of J&S, testified that he is at every job site and would be able to provide a list of the 70 addresses where the log-siding was installed. Pl.'s Ex. A, Dkt. 99-3; *see also* Def. Ex. A, Dkt. 111-2. "In responding to an interrogatory a party cannot unreasonably limit his answer to matters within his own knowledge and ignore information immediately available to him or under his control." *Pilling v. General Motors Corp.*, 45 F.R.D. 366, 369 (D. Utah 1968). J&S had access to this information

through Mr. Walrath yet did not provide it in response to the interrogatories and has not provided a substantial justification for that failure. The only explanation provided by J&S is that it has fully complied with the discovery requests. Looking at this discrepancy between J&S's own testimony and its responses, the Court struggles to see how this constitutes complete compliance.

That said, TB Holding's motion to compel sought to compel responses to several requests for production in addition to compelling responses to the interrogatories. TB Holding's third-party discovery located the addresses of two projects that were not reflected in J&S' production, which suggested other invoices or materials may have been omitted. At this point, it seems clear to the Court that J&S has produced all of the documents in its possession in response to the requests for production such that its response to these requests was substantially justified— J&S cannot produce documents it does not have. *See Alphonsis v. Century Regional Detention Facility*, No. CV 17-03650-ODW (DFM), 2020 WL 11025946, at *2 (C.D. Cal. Oct. 28, 2020).[3] Accordingly, because J&S's responses were substantially justified only as to the requests for production and not the

---

[3] To the extent this is not the case, the Court's order on TB Holding's motion to compel still stands and any failure to comply with that order by producing all documents in J&S's possession, custody, and control will warrant sanctions against J&S.

MEMORANDUM DECISION AND ORDER - 6

interrogatories, the Court will award TB Holding one half of its reasonable fees expended. *See Byzantine Catholic Eparchy of Phoenix v. Burri Law PA*, No. CV-20-00779-PHX-ROS, 2022 WL 3597106, at *4 (D. Ariz. June 17, 2022) (awarding one-half of party's reasonable fees where some responses were substantially justified and some were not).

Finally, J&S argues that awarding fees would be unjust under the circumstances. *See* Fed. R. Civ. P. 37(a)(5)(A)(iii). J&S argues that the requested fees are disproportionate to the scale and importance of the dispute. The cost of the dispute is driven, largely, by its protracted nature for which J&S bears some responsibility. "[B]ut for [J&S's] noncompliance, [TB Holding] would not have filed a Motion to Compel. [TB Holding] extended numerous opportunities to [J&S] to comply before turning to the Court for relief." *See Pelayo v. Platinum Limousine Servs., Inc.*, No. 15-00023 DKW-KJM, 2018 WL 310126, at *6 (D. Haw. Jan. 5, 2018). The amount of fees requested does not make the award of reasonable fees unjust.

J&S also suggests that TB Holding is not entitled to fees because it has not provided responses to other discovery. This argument is unavailing. *See Sandoval v. Yeter*, No. CV 18-0867-CBM (JPRx), 2019 WL 7905731, at *2 (C.D. Cal. Oct. 31, 2019) (rejecting similar argument where party did not move to compel the

complained-of discovery and noting that "discovery is not conducted on a 'tit-for-tat basis.'"). J&S's other arguments largely reiterate the issues addressed above and, further, the Court finds that no circumstances make the award of any fees unjust, particularly where the Court will reduce those fees by half under Federal Rule of Civil Procedure 37(a)(5)(A)(ii). TB Holding, therefore, is entitled to half its reasonable fees.

### B.   Amount of Award

TB Holding seeks a total of $84,192.84 in fees and costs. To determine the reasonableness of the fees sought, the Court considers the reasonableness of the rate charged and hours expended by TB Holding's attorneys before calculating the lodestar amount. *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995). The party seeking fees has the burden of establishing the claimed rates and hours expended are reasonable. *Blum v. Stenson*, 465 U.S. 886, 897 (1984).

### 1.  Reasonable Rate

The reasonableness of an hourly rate depends on the rate "in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 1008). "[T]he relevant community is the forum in which the district court sits." *Id.*

Here, Ms. Haws' billing rate is $345 and Mr. Camacho's billing rate is $600.[4] J&S does not appear to dispute the reasonableness of the rate charged by Ms. Haws. The Court agrees $345 is a reasonable rate for an attorney of Ms. Haws' skill and experience in the District of Idaho. *See e.g.*, *Bundy v. St. Luke's Health Sys. Ltd.*, No. 1-23-cv-00212-DCN, 2023 WL 7282880, at *4 (D. Idaho Nov. 2, 2023) (approving Ms. Haws' billing rate).

J&S, however, does not agree that Mr. Camacho's rate is reasonable. It argues that his $600 per hour rate should be reduced to reflect rates charged in the District of Idaho. TB Holding argues this heightened rate is appropriate because Mr. Camacho has 22 years of experience in patent litigation, which requires specialized skills and knowledge. *See Camacho Decl.* at ¶ 12, Dkt. 99-2. Although the general rule requires that billing rates be measured against the rates of attorneys in the community, non-local counsel may be compensated for higher, out-of-town rates when "local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of expertise, or specialization required to handle" the case. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (affirming district court's award of attorneys' fees at San Francisco rate

---

[4] The Court will note that both Mr. Camacho and Ms. Haws have discounted their fees to below their usual rate.

where the relevant community was Sacramento). To recover fees based on this higher rate, TB Holding must demonstrate that local counsel was unavailable inside the local forum. *See Barjon v. Dalton*, 132 F.3d 496, 501 (9th Cir. 1997).

TB Holding does not provide any evidence or make any argument that local counsel was unavailable. Instead, it argues that this case requires specialized knowledge, which the Court does not dispute. Whether a case requires specialized knowledge, however, is not the relevant test in the Ninth Circuit. *Id.* The only suggestion that local counsel is unavailable is simply the inference of that fact from both parties' decision to hire non-local counsel. This inference, alone, is insufficient for the Court to conclude local counsel is unavailable. *See J.R. Simplot v. McCain Foods USA, Inc.*, --- F. Supp. 3d ---, 2024 WL 2348217, at *62 (D. Idaho 2024) ("Notably, *all* parties in this case retained national counsel. But Simplot has not explained that it *needed* to obtain national counsel because there were no other options locally."). The Court will, accordingly, reduce Mr. Camacho's rate to a rate in line with those in the District of Idaho.

Although rates within this district vary, rates at or above $400 per hour are considered at the higher end of reasonable rates. *Balla v. Idaho State Board of Correction*, No. CV-81-1165-S-BLW, 2016 WL 6762651, at *12 (D. Idaho Feb. 1, 2016) (stating hourly rate of $435 at the "higher end of the Boise legal market.").

This Court recently concluded that, in a patent litigation case, the prevailing market rate for partners with 30 years of experience was $450 while the prevailing rate for a partner with 10 years of experience was $340. *Composite Resources, Inc. v. Rood*, No. 2:21-cv-00500-BLW, 2023 WL 2354831, at *4 (D. Idaho Mar. 3, 2023). Because Mr. Camacho's experience falls somewhere between the attorneys in *Composite Resources*, the Court will reduce Mr. Camacho's rate to $425 per hour. This rate reflects the prevailing market rate in the District of Idaho for partners with about 20 years of experience while also accounting for his specialized patent knowledge. *See Ivanov v. Fitness Elite Training Center, Inc.*, No. 1:20-cv-00380-CWD, 2024 WL 2978627, at *4 (D. Idaho June 13, 2024) (finding $400 hourly rate reasonable for attorney with 24 years' experience); *Nelson-Ricks Cheese Company, Inc. v. Lakeview Cheese Company, LLC*, No. 4:16-cv-00427-DCN, 2018 WL 6186798, at * 5 (D. Idaho, Nov. 27, 2018) (finding hourly rate of $435 "at the high end of a reasonable rate" but not excessive in intellectual property case). As such, Mr. Camacho's adjusted rate is $425 and Ms. Haws' rate remains $345.

## 2.  Reasonable Hours Expended

TB Holding claims it is entitled to the 145.4 hours it expended between September 2023 and May 2024 attempting to obtain J&S's responses to its

discovery requests.[5] Under Rule 37(a)(5), a party may recover for "expenses resulting from efforts to secure an order compelling discovery." *Liew v. Breen*, 640 F.2d 1046, 1051 (9th Cir. 1981). When determining the number of hours to be used for the lodestar calculation, the Court should exclude hours "that were not reasonably expended." *Hensley*, 461 U.S. at 434. The Court finds that 67.8 of the claimed hours are reasonable and the remaining hours will be excluded from the lodestar calculation as unreasonable, redundant, or unnecessary. The excluded entries are addressed in greater detail below.

*a.*   Entries Unrelated to the Dispute

Several entries included in TB Holding's request must be excluded as they do not reflect time expended on the motion to compel or the underlying discovery dispute. The Court will exclude the 12.7 hours reflected in entries 18, 19, 20, 39, and 40 for because these entries reflect time spent on "required letter briefing to the Court" between January 23rd and 24th. Pl.'s Ex. G, Dkt. 116-4. The letter brief at issue during this time was about the supplemental briefing schedule as requested by the Court following the hearing on TB Holding's motion for partial summary

---

[5] TB Holding's Fees and Costs spreadsheet indicates that it seeks its fees for a total of 143.4 hours expended. Pl.'s Ex. G. This appears to be a slight computational error as the hours total to 145.4. *Id.*

judgment. *See* Dkts. 56 & 57.[6] This briefing has no relationship to the discovery dispute here, so the Court will exclude those hours from the lodestar calculation.

The Court will also exclude portions of entries 38, 41, 42, and 43 as some time included in those entries is unrelated to the discovery dispute or motion to compel. Pl.'s Ex. G, Dkt. 116-4. The Court will exclude 0.8 hours from entry 38 for the time spent by counsel reviewing plaintiff's fourth set of discovery requests, reviewing emails regarding Joe Walrath's deposition, and reviewing an email from opposing counsel regarding email discovery. *Id.* These tasks do not relate to the issues underlying the motion to compel or the motion itself, so this time will be excluded from the lodestar calculation. Entries 41 and 42 include 0.2 hours spent by counsel reviewing an email related to a different discovery dispute, which will be excluded as will the 0.1 hours in entry 43 spent reviewing emails about TB Holding's production. *Id.* Accordingly, the Court will exclude a total of 13.8 hours from the lodestar calculation as unrelated to the underlying dispute or motion to compel.

> *b.* Entries with Inadequate Descriptions

------

[6] To be sure, TB Holding did submit a letter brief to the Court related to discovery on January 22, 2024, however, the entries that include time for drafting the letter brief are all dated after January 22, 2024, so those entries do not reflect the time spent on this dispute. *See* Pl.'s Ex. G, Dkt. 116-4.

The Court will also exclude the time reflected in entries that have inadequate descriptions. "Billing records are inadequate when the court is unable to discern how the time spent is attributable to" the discovery violation. *In re Telescope Antitrust Litigation*, No. 20-cv-03642-EJD (VKD), 2023 WL 4983178, at *3 (N.D. Cal. Aug. 2, 2023) (internal quotation marks and citation omitted). The 18.1 hours included in entries 9, 10, 13, 16, 21, and 23 will be excluded because these entries "encompass[] work that falls outside. . . the scope of the work caused by [the discovery violation]." *See True Health Chiropractic Inc. v. McKesson Corp.*, No. 13-cv-02219-HSG (DMR), 2015 WL 3453459, at *2 (N.D. Cal. May 29, 2015). [7] The Court cannot determine the amount of time in these entries attributable to work caused by the discovery violation, so the Court will exclude all of the time included in these entries. The burden was on TB Holding to demonstrate the reasonableness of the hours expended and these entries fail to meet that threshold. *Hensley*, 461 U.S. at 434.

The Court will also exclude the 4.7 hours reflected in entries 29 and 36 because it is unclear which discovery disputes these entries relate to. These entries reflect time spent objecting on the sufficiency of J&S's discovery responses and

---

[7] For two of these entries, TB Holding has proactively reduced the time entry before submitting it to the Court to reflect the time spent on

resolving a discovery dispute, however, both entries are dated after the Court

granted permission to file a motion to compel so the Court cannot tell if this time is

attributable to the discovery violation at issue, so they will be excluded.

Finally, the Court will exclude the time reflected in entries 15, 17, 22, 26,

27, and 28 for "work on resolving discovery dispute regarding addresses." Pl.'s Ex.

G, Dkt. 116-4. This description, essentially repeated verbatim in all six entries, is

too vague for the Court to determine whether the time spent was reasonable or

what counsel did to attempt to resolve the dispute without a motion. Because the

Court cannot tell from the time entries how these 7.7 hours were spent, they will be

excluded. Accordingly, the Court will exclude a total of 30.5 hours included in

these entries from the lodestar calculation.

### c. Time Expended Before the Informal Conference

The Court will also exclude the 18.1 hours reflected in in entries 1 through 7

because during this period there were several discovery disputes the parties were

attempting to resolve—some of which are unrelated to this motion. *See* Pl.'s Ex. G,

Dkt. 116-4; Dkt. 65-9. Given the motion to compel concerned only a subset of

these issues, the Court will exclude these entries as it is not possible to determine

the amount of time attributable to each dispute. *See Manley*, 2023 WL 7164564, at

*3. Accordingly, the Court will exclude 18.1 hours from the lodestar calculation.

J&S makes a similar objection to all entries before December 28, 2024 and suggests that they should be excluded from the lodestar calculation. The Court disagrees that excluding all of these entries is appropriate. The entries remaining in this time frame reflect time spent by counsel trying to informally resolve the dispute, which is compensable in this district. *See Dickinson Frozen Foods, Inc. v. FPS Food Process Solutions Corp.*, No. 1:17-cv-00519-DCN, 2021 WL 2444157, at *9 (D. Idaho June 15, 2021) (collecting cases). To be sure, other districts in the Ninth Circuit have determined concluded the opposite. *See e.g. Byzantine Catholic Eparchy of Phoenix*, 2022 WL 3597106, at *4. The Court will follow the practice of this District and permit recovery of fees for tasks such as reviewing deficient responses and meeting-and-conferring with opposing counsel. *Id.*

### d.  Third-Party Discovery

J&S urges the Court to exclude the time TB Holding spent on third-party discovery from the lodestar calculation. The remaining entries that include time spent on third-party discovery will not be excluded as that time was reasonably spent and related to the motion to compel. J&S suggests it should not be responsible for this time because it also engaged in third-party discovery and such discovery is typical of litigation. The Court will not exclude this time as TB Holding would not have needed to undertake this third-party discovery had J&S

fully responded to the interrogatories requesting this information. As such, the Court will not exclude the hours expended on third-party discovery.

*e.* Time Expended on the Motion to Compel

Although the time spent preparing the motion to compel is undoubtedly compensable, some of the hours included in this request were not reasonably expended. "[I]n determining the reasonableness of hours spent in relation to a discovery motion, the Court considers factors such as the complexity of the issues raised, the need to review the record and pleadings, and the need to conduct legal research, in addition to the length of the briefing." *Marrocco v. Hill*, 291 F.R.D. 586, 588 (D. Nev. 2013).

Counsel for TB Holding billed a total of 23.1 hours for preparing the motion to compel and 7.9 hours for preparing the reply. Pl.'s Ex. G, Dkt. 116-4. Mr. Camacho billed 20.6 of those hours and the description for all of that time is "working on preparing TBH's motion to compel." *Id*. At the outset, these time entries do not provide enough detail for the Court to evaluate the reasonableness of the time spent and, as a result, will be reduced. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) (hours claimed in a motion for fees "may be reduced by the court where documentation of the hours is inadequate. . ."). Further, the motion to compel was straightforward and expending 20.6 hours on the motion

was unreasonable. *See Droz v. Boston Scientific Corporation*, No. 2:20-CV-48-RSM-DWC, 2020 WL 5891909, at *2 (W.D. Wash. Oct. 5, 2020) (finding that spending 8 to 12 hours on a straightforward motion to compel is reasonable). The motion to compel was only 8 pages with 14 exhibits, the issues were straightforward, and the motion itself cited no case law so significant legal research was not required.

The Court will reduce the 20.6 hours spent by Mr. Camacho working on the motion to compel to 10 hours. *See National Products, Inc. v. Aqua Box Prods., LLC*, No. 12-605-RSM, 2013 WL 12106900, at *4 (W.D. Wash. Mar. 15, 2023) (reducing hours by 60% where time entries provided no "explanation or objective evidence for the time expended."). The 2.5 hours spent by Ms. Haws on the motion to compel is reasonable as is the adjusted total of 12.5 hours between two attorneys. The Court finds that the 7.9 hours spent on the reply brief is reasonable and will include a total of 20.4 hours in the lodestar calculation related to the motion to compel.

### f.  Time Expended on Motion for Fees

TB Holding also seeks to recover its fees for 42.4 hours of work on its motion for fees and the associated reply brief. *See* Pl.'s Ex. G, Dkt. 116-4. Fees incurred while litigating a request for fees are generally recoverable. *Brown v.*

*Sullivan*, 916 F.2d 492, 497 (9th Cir. 1990). Mr. Camacho spent 25.70 hours on the present motion. The majority of the time requested is compensable given the length of the motion, research involved, and number of issues addressed. That said, the Court finds that some of the time spent revising, polishing, and finalizing the application is redundant. As such, it will exclude the 2.7 hours spent polishing and the 1.9 hours finalizing the application from the lodestar calculation. Pl.'s Ex. G, Dkt. 116-4. Mr. Camacho spent 14.2 hours on the reply brief, which the Court finds to be a reasonable amount of time as is the 2.5 hours Ms. Haws spent on the motion and reply combined. Accordingly, the Court will include 37.8 hours related to the motion for fees in the lodestar calculation.

### 3.  Lodestar Calculation

The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended by a reasonable hourly rate. *McGrath*, 67 F.3d at 252. For the 67.8 hours reasonably expended by two attorneys at a reasonable rate the lodestar figure is $28,143.00. This calculation is broken down by attorney below.

| Attorney | Rate | Hours | Fee |
|---|---|---|---|
| Jesse Camacho | $425 | 59.4 | $25,245.00 |
| Anne Haws | $345 | 8.4 | $2,898.00 |
| **Total** | | **67.8** | **$28,143.00** |

There is a strong presumption that the lodestar figure represents a reasonable fee. *Morales*, 96 F.3d at 364–65. The Court does not find that any factors require adjusting the fee. As discussed above, the Court will award TB Holding one-half of its reasonable fees. As such, TB Holding will be awarded attorneys' fees in the amount of $14,071.50.

### C.    Reasonable Costs

In addition to attorneys' fees, TB Holding requests its costs related to the motion to compel. "District Courts within the Ninth Circuit have held 'reasonable expenses' under Rule 37(a)(5) can include an award of costs." *Dickinson Frozen Foods, Inc.*, 2021 WL 2444157, at *11. TB Holding seeks reimbursement for the $1,072.84 spent on third-party discovery and $395 on accessing the AIPLA survey.

TB Holding served six subpoenas directed to Shawn Dye, Terry Marsden, and their companies. It argues these subpoenas were necessary because J&S did not provide the address information for their log-siding projects. TB Holding ultimately talked Dye and Marsden, who provided additional address information. TB Holding did not take the deposition of any third-party. J&S argues this cost is not recoverable because TB Holding likely could have obtained this information without serving subpoenas and J&S incurred similar costs attempting to obtain the address information to avoid a motion to compel. The Court will allow TB Holding

to recover the cost of serving these subpoena as absent J&S's failure to comply with the discovery requests, TB Holding would not have needed to incur these costs. The Court will not award the cost of counsel's AIPLA membership. TB Holding has not demonstrated that such cost was reasonably necessary to bring the motion for fees. Accordingly, TB Holding may recover $1,072.84 in costs.

### D.     Deferring Payment

J&S has also requested that the Court defer payment of such fees until the conclusion of the litigation. TB Holding does not address this request in its reply, so the Court will assume the request is unopposed and will defer payment until 30 days after judgment is entered in this case.

## ORDER

**IT IS ORDERED that:**

1.     Plaintiff's Motion for Attorneys' Fees (Dkt. 99) is **GRANTED.**

2.     Plaintiff is awarded $14,071.50 in attorneys' fees and $1,072.84 in costs.

3.     Defendant must comply with this order within 30 days of judgment being entered in this case.

DATED: August 6, 2024

B. Lynn Winmill
U.S. District Court Judge