UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TB HOLDING, a Colorado limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>J&S SIDING, an Idaho limited liability company,<br><br>Defendant. | Case No. 4:22-cv-00307-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

### INTRODUCTION

Before the Court is J&S Siding's motion to dismiss (Dkt. 140). For the reasons described below the Court will deny the motion.

### BACKGROUND

In 2022, TB Holding filed its complaint against J&S alleging infringement of three patents related to a simulated log-siding machine. *See Compl.*, Dkt. 1. J&S denies any allegations of infringement. Relevant here, TB Holding filed an amended complaint to correct an inaccurate sentence in the Complaint in June 2024. Dkt. 131. In response to that motion, J&S filed a motion to dismiss alleging that TB Holding lacks standing to bring an infringement claim and even if it does

**MEMORANDUM DECISION AND ORDER - 1**

have standing, the Amended Complaint should be dismissed for failure to join a necessary party. *See* Dkt. 140. J&S claims that North American Manufacturing Company, or NAMC for short, is a necessary party because it is TB Holding's exclusive licensee. TB Holding disagrees both with the contention that NAMC is a necessary party and that it is TB Holding's exclusive licensee. Importantly, since the present motion was filed, TB Holding submitted a declaration from Ryan Reed-Baum, a co-owner of NAMC, stating that "NAMC hereby agrees and stipulates to be bound by the final, non-appealable judgments of this Court regarding any of the asserted patents in this case." *Decl. of Reed-Baum* at ¶ 6, Dkt. 165-1. The declaration further states that "NAMC is not allowed to bring a patent-infringement action against J&S Siding without TB Holding joining such action, and NAMC will not do so." *Id.* at ¶ 7. Despite these statements, J&S insists NAMC must still be joined.

## LEGAL STANDARD

Rule 12(b)(7) allows a party to move for dismissal where there has been a "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Rule 19 mandates a three-part inquiry to determine whether an action should be dismissed for failure to join an indispensable party. *See e.g.*, *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010). "First, the court must determine whether a nonparty

**MEMORANDUM DECISION AND ORDER - 2**

should be joined under Rule 19(a)." *Id.* If an absentee meets the requirements of Rule 19(a), "the second stage is for the court to determine whether it is feasible to order that the absentee be joined." *Id.* Finally, if joinder is not feasible, the court must determine at the third stage whether they can proceed without the absentee or whether the action must be dismissed. *Id*. A nonparty is considered indispensable such that, in its absence, an action must be dismissed when it "not only [has] an interest in the controversy, but [has] an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." *Shields v. Barrow*, 58 U.S. 130, 139 (1855). As the moving party, J&S bears the burden of proving that dismissal is warranted. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

## ANALYSIS

J&S claims that TB Holding lacks standing to bring its infringement claims and that NAMC is an indispensable party to this litigation. Since standing is a threshold issue, the Court will first address the question of standing before turning to joinder.

### A.   TB Holding's Standing

J&S argues that TB Holding lacks standing to bring suit against J&S

because NAMC is the true owner of the patent. For purposes of standing, a patent cannot have multiple separate owners. *Alfred E. Mann Foundation for Scientific Research v. Cochlear Corp.*, 604 F.3d 1354,1359 (Fed. Cir. 2010).

The patent owner retains the right to sue infringers unless it transfers all or substantially all rights to an exclusive licensee. "[T]o determine whether a licensor has transferred away sufficient rights to render an exclusive licensee the owner of patent" the Federal Circuit has listed several rights that courts should consider, including:

> the scope of the licensee's right to sublicense, the nature of the license provisions regarding the reversion of rights to the licensor following breaches of the license agreement, the right of the licensor to receive a portion of the recovery in infringement suits brought by the licensee, the duration of the license rights granted to the licensee, the ability of the licensor to supervise and control the licensee's activities, the obligation of the licensor to continue paying patent maintenance fees, the nature of any limits on the licensee's right to assign its interests in the patent.

*Id*, at 1360–61. The most important factor, however, is "the nature and scope of the licensor's retained right to sue accused infringers." *Id.* at 1361.

Here, the license agreement transfers to NAMC the "exclusive, non-transferrable license to make, use, offer-for-sale and sell Licensed Product(s) in the Field of Use in the Territory." Def. Ex. 1 at § 2.1, Dkt. 139-1. That said, it is clear TB Holding did not transfer all substantive rights in the patent to NAMC. Most importantly, it retained the right to sue infringers and control actions against third

**MEMORANDUM DECISION AND ORDER - 4**

parties.

In *Alfred E. Mann*, the Court found that the licensor's retained right to sue suspected infringers was sufficient for it to still be considered the owner of the patents. 604 F.3d at 1362. The exclusive license agreement in *Alfred E. Mann* provided that both the licensor and licensee were required to notify the other party upon learning of possible infringement. *Id.* at 1361. After notification, the licensee had "the absolute right to decide whether or not to initiate litigation." *Id.* Only if the licensee opted not to pursue the litigation did the licensor's right to sue vest. *Id.* If the licensee brought the litigation, it controlled the litigation. *Id.* The same is true if the licensor brought the litigation instead—its controlled the litigation. *Id.* Regardless of which party initiates the litigation, the proceeds from that litigation are shared. *Id.*

In contrast, the license agreement between TB Holding and NAMC provides that TB Holding has the exclusive right to control all actions against third parties. Def. Ex. 1 at § 5.8, Dkt. 139-1. While NAMC may "take action on infringement, imitations, or unauthorized use" it may only do so subject to TB Holding's permission and with the caveat that TB Holding may still control the action. *Id.* at § 5.8. Further, unlike in *Alfred E. Mann*, TB Holding is not required to split the proceeds of any successful litigation with NAMC nor is NAMC required to split

**MEMORANDUM DECISION AND ORDER - 5**

the proceeds of an action it pursues with TB Holdings permission. *Id.* The agreement certainly contemplates that the parties "shall cooperate," such cooperation is not consistent with an assignment of all substantial rights. *See Id.* at § 5.7; *Univ. of South Florida Research Found., Inc. v. Fujifilm Med. Sys. U.S.A., Inc.*, 19 F.4th 1315, 1322 (Fed. Cir. 2021) ("Here, as in *Immunex*, the patent owner and licensee are required to cooperate in enforcement of the [ ] patent. As explained in the agreement, 'USF and USFRF desire to cooperate in the development, protection, and commercial exploitation of the said invention.'").

There is some discussion of NAMC's payment of, or contribution to, TB Holding's attorney's fees in pursing this action. Indeed, the license agreement is somewhat inconsistent on this front. Beyond retaining the exclusive right to control actions against third parties, § 5.8 provides that the action shall be taken at licensor's own expense and, should NAMC pursue an action with TB Holding's consent, it too must do so at its own expense. Def. Ex. 1 at § 5.8, Dkt. 139-1. These provisions contradict § 3.1 of the license agreement. § 3.1 provides that, as consideration for the exclusive license, NAMC must "pay or reimburse" TB Holding's "fees and costs incurred. . . for obtainment and maintenance of the Intellectual Property, including, but not limited to, reasonable attorney's fees and costs for preparation, filing, prosecution, maintenance, and enforcement." Def. Ex.

**MEMORANDUM DECISION AND ORDER - 6**

1 at § 3.1, Dkt. 139-1. It also appears to conflict with reality as NAMC is paying TB Holding's attorney's fees. Nonetheless, J&S has not pointed to any case law that indicates the payment of these fees changes the fact that TB Holding has retained the right to sue.

Accordingly, the right to sue retained by TB Holding is at least as substantial as that retained by the licensor in *Alfred E. Mann*, if not more substantial. In *Alfred E. Mann*, the licensor only retained a right to sue if the licensee *did not* pursue litigation. Here, there is no similar condition precedent for TB Holding's right to sue. NAMC is only able to pursue an action with the written permission of TB Holding. For purposes of standing, TB Holding retains ownership over the patents and has standing to bring this action.

B.   **Must NAMC be Joined?**

J&S argues that even if TB Holding has standing, this case should still be dismissed for failure to join NAMC as a necessary party. It claims that NAMC is TB Holding's exclusive licensee and, consistent with *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336 (Fed. Cir. 2006), exclusive licensees must be joined in patent infringement actions. TB Holding takes no position on whether NAMC is its exclusive licensee but suggests that it may not be. *Response* at 14, Dkt. 142. For the purposes of this motion, the Court need not decide whether

MEMORANDUM DECISION AND ORDER - 7

NAMC is in fact an exclusive licensee. Even assuming NAMC is an exclusive licensee, it is not a necessary party that must be joined.[1]

Rule 19(a) sets forth the circumstances when a party will be deemed necessary to a litigation. *Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012). A party is necessary "if, in [its] absence, the court cannot accord complete relief among the existing parties; " "if [it] has an interest in the action and resolving the action in [its] absence may as a practical matter impair or impede [its] ability to protect that interest;" or "if [it] has an interest in the action and resolving the action in [its] absence may leave an existing party subject to inconsistent obligations because of that interest. *Id.* (citing Fed. R. Civ. P. 19(a)(1)). NAMC has agreed to be bound by any final judgment from this Court. *Decl. of Reed-Baum* at ¶ 6, Dkt. 165-1. It has further agreed that NAMC could not, and would not, bring any action against J&S for infringement without first joining TB Holding as a co-plaintiff. *Id.* at ¶ 7. Practically speaking, this would prevent

---

[1] TB Holding argues that *Luminara Worldwide, LLC v. Liown Electronics Co. Ltd.*, 814 F.3d 1343 (Fed. Cir. 2016), resolves this motion in its favor. In *Luminara*, a licensee, Luminara, brought suit without joining the patentee, Disney. *Id.* at 1350. The Federal Circuit held that joinder was not required because Luminara had "the sole and exclusive right to sue infringers of the patents." *Id.* at 1350 (internal quotation marks omitted). Accordingly, the concern that the alleged infringer would face multiple suits was unfounded as Disney could not bring any action against it as it did not retain a right to sue. Here, however, NAMC appears to have some ability, even if limited, to bring infringement actions against third parties. *See* Def. Ex. 1 § 5.8, Dkt. 139-1. For this reason, *Luminara*, alone, does not resolve this motion.

duplicitous litigation or multiple inconsistent judgments—the relevant concerns underlying Rule 19's joiner requirement. *See Salt River*, 672 F.3d at 1179. It seems plain that this agreement resolves this motion.

Nonetheless, the Court will briefly tick through the requirements of Rule 19(a)(1), although none of them apply to NAMC and this litigation. First, the Court sees no reason, and J&S has not identified any reason, why NAMC's absence would render any relief incomplete. Any concern that relief would be incomplete is mitigated by the fact that any judgment would bind NAMC. *See Sequal Technologies, Inc. v. Inogen, Inc.*, No. 10-CV-410-H (JMA), 2010 WL 11508757, at *4 (S.D. Cal. June 10, 2010).

Second, it seems there can be no argument that continuing this litigation in NAMC's absence will "impair or impede" its ability to protect its interest. NAMC is well aware of this litigation and, presumably, has been for some time. If it believes that it had such an interest in need of protection, it could have intervened earlier or, likely, joined as a co-plaintiff at the start of this litigation. *Everest Nat'l Ins. Co v. Megasand Enter.*, No. 4:20-CV-1265, 2021 WL 413527, at *3 (S.D. Tex. Feb. 5, 2021) (finding party not necessary where they have the opportunity and ability to intervene and chose not to and agreed to be bound by the judgment of the Court). The Court will not second-guess NAMC's determination that no

**MEMORANDUM DECISION AND ORDER - 9**

interest compels its presence in this litigation.

The final consideration, and perhaps most important to the present motion is whether NAMC's absence would leave J&S at risk of incurring multiple obligations. It will not. As Mr. Reed-Baum's declaration makes clear, NAMC has agreed to be bound by any judgment in this case. *Decl. of Reed-Baum* at ¶ 6, Dkt. 165-1. Moreover, he has represented that NAMC will not and could not bring a subsequent claim for infringement against J&S without joining TB Holding as a co-plaintiff. *Decl. of Reed-Baum* at ¶ 7, Dkt. 165-1.[2] Any subsequent claim against J&S brought by NAMC regarding the subject of this litigation would be barred by res judicata. *Montana v. United States*, 440 U.S. 147, 153 (1979) ("[A] final judgment on the merits bars further claims by parties or their privies based on the same cause of action.").[3]

The Federal Circuit's determination in *Aspex* does not require a different

---

[2] This representation is consistent with the Court's decision as to TB Holding's standing. TB Holding is the patent owner and any claim brought for infringement must join the patent owner. *Alfred E. Mann Foundation for Scientific Research v. Cochlear Corp.*, 604 F.3d 1354, 1359 (Fed. Cir. 2010).

[3] J&S raised the hypothetical that TB Holding could simply dismiss this action if it is not resolved in its favor and bring a claim against J&S on behalf of NAMC. This concern is unfounded. Rule 41 does not permit such gamesmanship this late in the litigation as TB Holding cannot voluntarily dismiss this claim without the consent of all parties who have appeared or by Court order. Fed. R. Civ. P. 41(1)(A)(ii) and (2).

result. Other courts interpreting *Aspex* have reached the same conclusion:

> [O]ne commentor has noted that "[i]t is possible that circumstances, such as an agreement whereby the exclusive licensee waives its right to join a suit brought by the patentee and agrees to be bound by any determination rendered in that suit, would negate the requirement that an exclusive licensee be joined in the suit, since the policy goal of precluding the possibility of multiple lawsuits would be achieved." This Court agrees.

*Amgen, Inc. v. F. Hoffman-LaRoche Ltd.*, 456 F. Supp. 2d 267, 283 (D. Mass 2006) (internal citations omitted). J&S has largely focused on amorphous claims of prejudice, however, both Rule 19 and *Aspex* are more narrowly focused on the prejudice resulting from multiple or duplicitous obligations. Based on the circumstances of this case, there is no risk that J&S will be subject to multiple obligations in NAMC's absence. Because none of the requirements of Rule 19(a) are met, NAMC is not a necessary party and the Court need not determine whether joinder is feasible. Accordingly, J&S's motion is denied.

### C. Sealing

Because this Order relies on and quotes a sealed license agreement, the court directs the Clerk to provisionally file this order under seal. The Court orders the parties to meet and confer regarding which, if any portions of this order they seek to redact. Within 30 days of the issuance of this order, counsel shall submit one joint statement or, if they cannot agree on a joint statement, competing statements indicating the portions of the order they seek to have redacted and on what basis.

**MEMORANDUM DECISION AND ORDER - 11**

*See Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179–80 (9th Cir. 2006). The parties shall also submit a proposed redacted order incorporating the requested redactions.

## ORDER

**IT IS ORDERED that:**

1. Defendant's Motion to Dismiss (Dkt. 140) is **DENIED**.

2. The Clerk shall provisionally file this order under seal. Within 30 days of the issuance of this order the parties shall submit joint or separate statements indicating the portions of the order they seek to redact. Failure to file any statement will result in the unsealing of this Order in its entirety.

DATED: **January 21, 2025**

B. Lynn Winmill
U.S. District Court Judge