Frederick J. Hahn, III (ISB No. 4258)
Samuel K. Hahn (ISB No. 10911)
HAHN LAW OFFICE
PO Box 50698
Idaho Falls, Idaho 83405
Telephone:  208.506.5825
Facsimile:  208.506.5826
fjh@hahn-law.net
skh@hahn-law.net

Elizabeth G.H. Ranks (Admitted *Pro Hac Vice*)
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA  02210
Telephone:  617.542.5070
Facsimile:  617.542.8906
ranks@fr.com

*Attorneys for Defendant*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| TB HOLDING COMPANY LLC, a Colorado limited liability company<br><br>Plaintiff,<br><br>v.<br><br>J and S SIDING COMPANY, LLC, an Idaho limited liability company<br><br>Defendant. | Case No. 4:22-cv-00307 BLW<br><br>**J AND S'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE DAMAGES OPINIONS OF JAMES HARRINGTON** |

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................. 1
II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ..................... 1
III.   LEGAL STANDARD ............................................................................................ 2
IV.    ARGUMENT ......................................................................................................... 3
     A.     The Court Should Exclude Mr. Harrington's Reasonable Royalty Opinions ......... 3
          1.     Mr. Harrington's testimony should be excluded because relies on license agreements with a third party that were never produced. ................ 3
          2.     Mr. Harrington's reasonable royalty rate is arbitrary and untethered to the facts in the case. ...................................................................................... 6
     B.     Mr. Harrington's Design Patent Damages Theory Is Fatally Flawed Because he Impermissibly includes Ancillary Product Sales in his Calculations ................ 8
V.     CONCLUSION .................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                          Page(s)

*CIT Grp./Bus. Credit, Inc. v. Graco Fishing & Rental Tools, Inc.*,
    815 F.Supp.2d 673 (S.D.N.Y. 2011)...............................................................................8

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993).........................................................................................................4

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
    567 F.3d 1314 (Fed. Cir. 2009).....................................................................................14

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
    318 F.Supp. 1116 (S.D.N.Y., 1970)................................................................................5

*Junker v. Med. Components, Inc.*,
    2021 WL 131340 (E.D. Pa. Jan. 14, 2021)...................................................................13

*King–Indiana Forge, Inc. v. Millennium Forge, Inc.*,
    No. 1:07–cv–00341–SEB–SML, 2009 WL 3187685 (S.D. Ind. Sept. 29, 2009)...........9

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999).........................................................................................................4

*Lucent Technologies, Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009).....................................................................................14

*Marvel Characters, Inc. v. Kirby*,
    726 F.3d 119 (2d Cir. 2013)............................................................................................8

*Rembrandt Social Media, LP v. Facebook, Inc.*,
    22 F.Supp.3d 585 (E.D.Va., 2013) ...............................................................................12

*Samsung Elecs. Co. v. Apple Inc.*,
    137 S. Ct. 429 (2016).....................................................................................................13

*Shure Incorporated v. ClearOne, Inc.*,
    2021 WL 4748744 (D. Del. 2021)...........................................................................13, 14

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011).....................................................................................11

*Wi-LAN Inc v. Sharp Elecs. Corp.*,
    992 F.3d 1366 (Fed. Cir. 2021).......................................................................................8

*Wordtech Systems, Inc v. Integrated Networks Solutions, Inc.*,
    609 F.3d 1308 (Fed. Cir. 2010).......................................................................................6

*Wordtech Systems, Inc v. Integrated Networks Solutions, Inc.*,
    609 F.3d at 1319–22 ......................................................................................................10

**Other Authorities**

Federal Rules of Evidence, Rule 703........................................................................................7, 8

Federal Rules of Evidence, Rule 702........................................................................................4, 5

I.  **INTRODUCTION**

The Court should grant J and S's motion to exclude the opinions and testimony of TBH's damages expert Mr. James Harrington.  First, Mr. Harrington's report and testimony present a reasonable royalty determination founded on agreements that he never saw.  Moreover, his ultimate reasonable royalty calculations are arbitrary and untethered to the facts in this case.  Second, Mr. Harrington presents flawed design patent damages calculations that would be unduly prejudicial to J and S.  For example, Mr. Harrington improperly included sales of ancillary products, with no relation to the asserted patents or the simulate log siding, to inflate his damages opinion.  J and S respectfully requests that the Court strike these improper and unduly prejudicial damages opinions.

II. **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

It is undisputed that in 2009, Joe Walrath of J and S Siding purchased a simulated log siding attachment from Ted Baum.  Am. Compl. (Dkt. 134) at ¶¶ 13, 14.  J and S paid $10,925 to Mr. Baum, and Mr. Baum helped install the attachment on J and S's conventional siding machine.  *See* TBH Stat. Mat. Facts (Dkt. 42-2) at ¶ 10; *see also* Ex. 1[1] (Harrington Dep.) at 18:3-6.  Subsequently, Ted Baum was issued three patents: two utility patents covering the log siding attachment and the log siding panel and one design patent on the log siding panel (collectively, the asserted patents).   Since the issuance of the asserted patents, TBH entered into a free license agreement with North American Machines of Colorado ("NAMC") giving them the right to use and sub-license the asserted patents.  Ex. 2 (NAMC License) at 2.1-2.6.  NAMC is a company owned and operated by Ted Baum and Ryan Reed Baum, the same owners and

---

[1] All exhibits are attached to the Declaration of Elizabeth Ranks, filed herewith.

operators of Plaintiff TB Holdings ("TBH").[2]  Ex. 3 (6/19/2024 Reed-Baum Dep.) at 256:3-15. NAMC has since allegedly entered into five sub-license agreements for the asserted patents. After the close of fact discovery in this case, TBH produced the NAMC license.  However, none of the sub-licenses that NAMC entered have been produced.[3]

As part of his reasonable royalty analysis, despite never viewing the alleged licenses between NAMC and third-parties, Plaintiff's damages expert, Mr. James Harrington, relies on these licenses and attributes them to TBH.  Ex. 1 (Harrington Dep.) at 65:5-66:7; Ex. 4 (Harrington Rpt.) at 61-62. Additionally, Mr. Harrington's proffered reasonable royalty rate ignores critical facts in this case, and is thus arbitrary and should be excluded.  Mr. Harrington's analysis of design patent damages is also flawed, as he inappropriately includes ancillary product sales and revenues, not profits.  Mr. Harrington's flawed analysis should be stricken.

### III.  LEGAL STANDARD

"Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993).  Rule 702 bars expert testimony unless "the proponent demonstrates to the Court that it is more likely than not that: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.  Fed. R. Evid. 702 (emphasis added).

---

[2] J and S has a pending motion to dismiss for TBH's failure to name NAMC as a party to the dispute.  *See* Dkt. 139.

[3] TBH did produce the first and last page of what it alleges are the licenses with NAMC, but it is unclear from these pages who entered into a license and what the terms of any license are.  *See* Ex. 5.

J and S Motion to Exclude Damages Opinions of
James Harrington                                                                                                                Page | 2

Trial courts serve as a "gatekeeper," ensuring the reliability and relevance of the expert testimony offered into evidence. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Rule 702 was updated in 2023 to clarify and emphasize the Court's role: "Judicial gatekeeping is essential because just as jurors may be unable, due to lack of specialized knowledge, to evaluate meaningfully the reliability of scientific and other methods underlying expert opinion, jurors may also lack the specialized knowledge to determine whether the conclusions of an expert go beyond what the expert's basis and methodology may reliably support." Fed. R. Evid. 702 advisory committee's notes (2023 amendments).

## IV. ARGUMENT

### A. The Court Should Exclude Mr. Harrington's Reasonable Royalty Opinions.

Determining a reasonable royalty in a patent damages case requires the analysis of the *Georgia Pacific* factors. *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1120-1121 (S.D.N.Y., 1970). Proper analysis of *GP* factors helps determine the agreement the parties would have entered into as the result of a hypothetical negotiation. Here, Mr. Harrington's application of the *GP* factors to the facts in this case are fatally flawed. First, he relies on alleged license agreements that he did not review and misattributes; and second, his proffered royalty rate is arbitrary and untethered to the facts of this case. For at least these reasons, Mr. Harrington's reasonably royalty analysis should be excluded.

### 1. Mr. Harrington's testimony should be excluded because relies on license agreements with a third party that were never produced.

*GP* factor 1 helps assess facts that prove or tend to prove an established royalty by examining the royalties (or lack thereof) received by the patentee for the licensing of the patents in suit. *Wordtech Systems, Inc v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010). The foundation of Mr. Harrington's reasonable royalty analysis is based on

information he alleges is from TBH's licensees. Ex. 4 (Harrington Rpt.) at 18, 61-63; 81-83 (discussing TBH's alleged licensing rate and GP factors 1, 12, and 13). However, during discovery, TBH only produced the first and last pages of these alleged licenses. Ex. 5 (pages from TBH's production accounting for the first and last page of three of the alleged five licenses). These pages do not offer any relevant details about the alleged licensing agreements, but even if they did, Mr. Harrington failed to review even those two pages when drafting his expert report and he did not know the name of the companies that allegedly signed these agreements. *See* Ex. 1 (Harrington Dep.) at 65:5-7; 86:18-20, 134:16-20. Further, Mr. Harrington confirmed at his deposition that he did not know that these alleged licenses were not with TBH, but that third-party NAMC was the actual alleged licensor. *Id.* at 64:16-21. Additionally, despite relying on the $10,000 down payment allegedly required by the licenses as the basis for his reasonably royalty opinion, Mr. Harrington admitted that he did not even know if the alleged licensees had even paid the $10,000 fee. Ex. 1 (Harrington Dep.) at 66:14-19; *see also* Ex. 7 (TBH produced ledger of payments by alleged licensees overtime, none of which are greater than $10,000). Thus, Mr. Harrington's analysis that prior licensees agreed to pay a $10,000 licensing fees and 10% royalty rates, an opinion that is the foundation for his entire reasonably royalty analysis, is not grounded in fact.

     Mr. Harrington's reasonably royalty analysis based on these alleged license agreements violates Rule 703 of the Federal Rules of Evidence. Rule 703 permits an expert to "base an opinion on facts or data in the case that the expert has been made aware of" that are not by themselves admissible, provided "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed.R.Evid. 703. Here, Mr. Harrington does not have the facts or data to assert that five parties entered into specific

agreements for the asserted patents.  Further, it was not reasonable for Mr. Harrington to simply rely on a description of agreements and alleged payments made in lieu of actually analyzing the agreements and payments himself, especially when Mr. Harrington's client should be in possession of the actual agreements and underlying facts regarding any payments under the agreements.

Mr. Harrington's failure to review the alleged license agreements dooms his reasonable royalty opinion.  Without examination of the licenses themselves, Mr. Harrington's adoption of the $10,000 and 10% royalty rate as an established royalty for the asserted utility patents is "simply [] a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony" and as such should be excluded.  *Marvel Characters, Inc. v. Kirby*, 726 F.3d119, 136 (2d Cir. 2013); *Wi-LAN Inc v. Sharp Elecs. Corp.*, 992 F.3d 1366, 1375 (Fed. Cir. 2021) ("Rule 703 was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." (citation and quotation marks omitted)).  In fact, Mr. Harrington's analysis of the license agreements comes only from Mr. Reed-Baum, not the licenses themselves.  Ex. 4 (Harrington Rpt.) at 61-62; Ex. 1 (Harrington Dep.) at 86:10-20 (admitting the same).  His analysis consists simply of Mr. Harrington parroting information provided to him by a TBH principle, and thus should be excluded.  *CIT Grp./Bus. Credit, Inc. v. Graco Fishing & Rental Tools, Inc.*, 815 F.Supp.2d 673, 677 (S.D.N.Y. 2011) (rejecting expert testimony based on "the conclusory statements of [the party's management] and not on his independent evaluation of the facts"); *King–Indiana Forge, Inc. v. Millennium Forge, Inc.*, No. 1:07–cv–00341–SEB–SML, 2009 WL 3187685, at *2 (S.D.

Ind. Sept. 29, 2009) ("When an expert's proffered opinion merely parrots information provided to him by a party, that opinion is generally excluded.").

Mr. Harrington never reviewed these alleged licenses, despite the agreements presumably being in TBH's possession, and yet these licenses form the foundation for Mr. Harrington's entire reasonable royalty opinion. For this reason, the Court should exclude Mr. Harrington's reasonable royalty opinion.

### 2. Mr. Harrington's reasonable royalty rate is arbitrary and untethered to the facts in the case.

Mr. Harrington proffers that J and S would agree to pay a 16.5% licensing fee and $16,500 downpayment during the hypothetical negotiation. Ex. 4 (Harrington Rpt.) at 85. This represents a 65% increase over TBH's other alleged licensing rates of 10%.[4] Ex. 4 (Harrington Rpt.) at 85-86. Similarly, Mr. Harrington alleges that J and S would have agreed to a $16,500 upfront payment, despite the alleged licenses only including a $10,000 upfront payment. *Id.* The Federal Circuit has rejected the notion that reasonable royalty rates calculated by a damages expert can be significantly higher than actual rates agreed to by other parties. *See Wordtech Systems, Inc v. Integrated Networks Solutions, Inc.*, 609 F.3d at 1319–22 (reversing a royalty rate that that was substantially higher than the licensing rate of 13 prior licenses). In addition to significantly adjusting the royalty rate and down payment upwards, Mr. Harrington ignores many critical facts in the case. For example, Mr. Harrington was apparently not aware that J and S purchased the log attachment from Mr. Ted Baum in 2009. Ex. 1 (Harrington Dep.) at 17:9-18. Mr. Harrington's report also fails to account for or analyze the free license to practice the

---

[4] As discussed in Section § IV.A.1, *supra*, these alleged agreements were never produced in discovery. For purposes of this section of the motion, even if we assume the licenses do include a $10,000 downpayment and a running 10% rate, Mr. Harrington's reasonable royalty analysis is still arbitrary and untethered to relevant facts.

asserted patents that TBH entered into with NAMC.  Ex. 1 (Harrington Dep.) at 85:9-87:4; Ex. 2 (NAMC License) at 2.1.

Mr. Harrington's proffered reasonably royalty of $16,500 down and 16.5% rate is not supported by the facts of this case.  The license agreements that Mr. Harrington claims to have relied on allegedly include a $10,000 down payment and a 10% running royalty.  Ex. 4 (Harrington Rpt.) at 86.[5]  Mr. Harrington alleges that these numbers are standard across each purported license.  *Id.*  In fact, Mr. Harrington reported that Mr. Reed Baum himself, the actual source of this information (not the agreements), stated that running royalty was based on sheets of siding sold, and no other factors.  Ex. 4 (Harrington Rpt.) at 62.  Mr. Harrington also acknowledges that he did not consider the fact that TBH provided NAMC with a license for $0 to practice the asserted patents.  Ex. 1 (Harrington Dep.) at 62:10-63:3; Ex. 2 (NAMC License) at 2.1.  Perhaps most striking is the fact that Mr. Harrington was apparently unaware that Joe Walrath previously paid Ted Baum $10,925 in 2009, when J and S purchased the log attachment.  Ex. 1 (Harrington Dep.) at 18:18-25.  Mr. Harrington has not only presented a arbitrarily high damages calculation, but his analysis also clearly omits key facts in the case.  *See, Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317-1318 (Fed. Cir. 2011) ("[E]vidence purporting to apply to these, and any other [Georgia Pacific] factors, must be tied to the relevant facts and circumstances of the particular case at issue and the hypothetical negotiations that would have taken place in light of those facts and circumstances at the relevant time.")  Accordingly, Mr. Harrington's calculations are unreliable and unduly prejudicial, and his proffered royalty rate should be stricken.

---

[5] Further, there is no evidence that any alleged licensee paid the $10,000 downpayment or reliably paid 10% on the volume of simulated log siding sold.  Ex. 1 (Harrington Dep.) at 66:14-19; Ex. 7 (ledger of payments under the alleged licenses).

### B.  Mr. Harrington's Design Patent Damages Theory Is Fatally Flawed Because he Impermissibly includes Ancillary Product Sales in his Calculations.

The Court should also strike Mr. Harrington's design patent damages opinion because his methodology is flawed, and his skewed opinion will unduly prejudice a jury.  Mr. Harrington includes J and S's ancillary product sales (windows, door frames, etc.) in his design patent damages calculation. Ex. 1 (Harrington Dep.) at 70-71; Ex. 4 (Harrington Rpt.) at Attachment 300-601.  This is despite the fact that there is no evidence that the fabrication and installation of simulated log siding drives demand for sales of any ancillary products nor are these products related to the asserted patents.  The inclusion of J and S's profits from the sale of unrelated products will present prejudicially inflated damages calculations to a jury, and should therefore be excluded.  *See Rembrandt Social Media, LP v. Facebook, Inc.*, 22 F.Supp.3d 585 (E.D.Va., 2013) (excluding a damages report where the flawed analysis created inflated numbers that would be prejudicial before a jury).  Accordingly, the Court should strike Mr. Harrington's design patent damages opinion.

Design patent damages may include only damages related to profits for the infringing article.  *See, Samsung Elecs. Co. v. Apple Inc.*, 137 S. Ct. 429, 434 (2016) (profits analysis under § 289 requires calculating the infringer's total profit made on the defined article of manufacture); *Shure Incorporated v. ClearOne, Inc.*, 2021 WL 4748744, *2 (D. Del. 2021), objections overruled, 2021 WL 4973981, *1–*2 (D. Del. 2021) (excluding portion of patentee's damages expert's opinion on disgorgement under § 289 since the expert used the total profits of the accused product but the infringing article of manufacture was only a component of the accused product.); *Junker v. Med. Components, Inc.*, 2021 WL 131340, at *35 (E.D. Pa. Jan. 14, 2021) (explaining that the patentee failed to meet its burden of establishing damages by including the total profits that the defendants made on a kit rather than the damages associated with the article

of manufacture itself). In this case, Mr. Harrington improperly includes ancillary product sales in his analysis. There is no evidence that J and S's sale of windows, door frames, trim, etc. is driven by the sale of the accused log siding nor is there any evidence that these products have a functional relationship with the accused log siding. *See Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1338–39 (Fed. Cir. 2009) (vacating a jury award where the patentee's expert failed to establish that the infringed feature was the basis for any customer demand for the product.); *Shure Incorporated v. ClearOne, Inc.*, 2021 WL 4748744, *2 (D. Del. 2021), objections overruled, 2021 WL 4973981, *1–*2 (D. Del. 2021) (excluding portion of patentee's damages expert's opinion on disgorgement under § 289 since the expert used the total profits of the accused product but the infringing article of manufacture was only a component of the accused product); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1333–34 (Fed. Cir. 2009) (vacating 72 million dollar of lost profits awarded on "pull-through" products, i.e., products that the patentee claimed it would have sold in conjunction with the sale of its patented product but for the infringement, since the patentee failed to show that the "pull-through" products had a functional relationship with the patented product).

The additional products and services offered by J and S, including the fabrication and installation of conventional metal siding, are not directly related to the sale of accused simulated log siding. Glaringly, Mr. Harrington makes no attempt to link the sales of these "ancillary products" to the log siding, beyond saying that J and S sold the items with the siding. Ex. 4 (Harrington Rpt.) at 70-71. J and S completed many sales of non-log siding products prior to offering for sale the accused log siding, and in fact makes these sales in jobs that include no log siding. *See* Ex. 6 (Denny Rpt.) at Attachment 1, 3. As such, Mr. Harrington has failed to show, beyond conclusory statements, how the accused products have driven ancillary product sales, and

thus Mr. Harrington's inflated and unduly prejudicial design patent damages calculation of $582,920 should be stricken.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court exclude the damages opinions of Mr. Harrington.

Dated: January 21, 2025

Respectfully submitted,

*/s/ Elizabeth G.H. Ranks*
Frederick J. Hahn, III (ISB No. 4258)
Samuel K. Hahn (ISB No. 10911)
HAHN LAW OFFICE
PO Box 50698
Idaho Falls, Idaho 83405
Telephone: 208.506.5825
Facsimile: 208.506.5826
fjh@hahn-law.net
skh@hahn-law.net

Elizabeth G.H. Ranks (Admitted *Pro Hac*)
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Telephone: 617.542.5070
Facsimile: 617.542.8906
ranks@fr.com

*Attorneys for Defendant*
*J and S Siding Company, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of January, 2025, the foregoing was filed electronically through the CM/ECF system, which caused the following party to be served by electronic means, as more fully reflected on the Notice of Electronic filing:

Anne E. Henderson (aehenderson@hollandhart.com)

Jesse B. Camacho (jesse.camacho@practus.com)

*/s/ Elizabeth G.H. Ranks*
Elizabeth G.H. Ranks