Anne Henderson Haws (ISB #10412)
HOLLAND & HART LLP
800 W. Main Street, Suite 1750
Boise, ID 83702-7714
Telephone: 208-342-5000
Facsimile: 208-343-8869
Email: ahhaws@hollandhart.com

Jesse J. Camacho (*Admitted Pro Hac Vice*)
PRACTUS, LLP
3810 NE 95th Street
Kansas City, MO 64156
Telephone: 816-343-4301
Facsimile: 626-466-9014
Email: jesse.camacho@practus.com

*Attorneys for Plaintiff TB Holding Company LLC*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TB HOLDING COMPANY LLC, a Colorado limited liability company, | |
| Plaintiff, | Case No. 4:22-cv-00307-BLW |
| vs. | **TB HOLDING COMPANY LLC'S OPPOSITION TO J&S'S MOTION TO EXCLUDE THE OPINIONS OF JAMES HARRINGTON** |
| J&S SIDING, an Idaho limited liability company, | **[Dkt. 176]** |
| Defendant. | |

**Table of Contents**

I.    SUMMARY ................................................................................................... 1

II.   ARGUMENT ................................................................................................ 1

      A.    Relying on copies of form agreements is not improper. .................... 1

      B.    Harrington's reasonable-royalty rate is not arbitrary. ....................... 6

      C.    Harrington's design-patent damages theory is not fatally flawed ................................. 8

III.  CONCLUSION ........................................................................................... 10

## I.    SUMMARY

J&S offers three reasons to exclude the damages report of James Harrington even though Harrington applied the same time-tested, Federal Circuit-approved methodology that its own expert sought to apply.[1] J&S first argues that Harrington failed to review actual licensee agreements. That argument fails because he reviewed accurate copies of the agreements. He reviewed a form license agreement that is representative of all licensees—the same form agreement to which J&S's own damages expert pegged his entire analysis. J&S secondly argues that Harrington's determined royalty rate is arbitrary. It is not. Harrington supports his rate with facts tied to this case. Finally, J&S incorrectly asserts that Harrington relied on revenue from sales of other products in its design-patent-damages analysis. Instead, Harrington meticulously carved out log-siding revenue for his design-patent analysis. The Court should deny J&S's motion in full.

## II.    ARGUMENT

TBH addresses each of J&S's arguments in turn.

### A.    Relying on copies of form agreements is not improper.

J&S first argues that Harrington's testimony should be excluded because he did not review actual license agreements. Dkt. 176-1 at 3. But Harrington, reviewed *a copy* of a form License Agreement that all licensees signed, mooting J&S's argument. Dkt. 177-7 is an illustrative copy of the form License Agreement (pp. 1-9). It includes respective signature pages at pp. 10-13.

J&S incorrectly asserts that "during discovery, TBH only produced the first and last

---

[1] *See Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), modified sub nom. *Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc*., 446 F.2d 295 (2d Cir. 1971).

pages of these alleged licenses." Dkt. 176-1 at 4. As indicated by its low Bates range (00010-00018), the form License Agreement was produced. It was one of the first documents produced and the production was done so more than three years ago (on November 7, 2022). *See* Dkt. 90-2 at 5. Both parties have used the form Agreement throughout this litigation, including at its early stages. For example, J&S affirmed that it "is a true and correct copy of a [generic User License Agreement] produced by Plaintiff with Bates label '000010 TB HOLDING.'" Dkt. 49-2 at ¶ 4 (bracketed text redacted).[2] That filing's "Exhibit B" is Dkt. 49-4 (filed under seal). J&S relies on it in its opening motion. *See* Dkt. 175-1 at 10-18 (initially filed under seal). J&S also relied on it to support its summary-judgment motion. *See* Dkt. 178-2 at ¶ 17 (conceding "TBH did, however, provide a copy of a generic User License Agreement during discovery, which may be similar to the User License Agreement Plaintiff describes[.]").

The form license agreement mentions one or more of the patents in suit or applications leading to them. Dkt. 177-7, at 1 ¶ A. Throughout this litigation, TBH has confirmed that the form Agreement is a representative copy of the actual agreements that the licensees of Docket 177-7 entered into. *See* Dkt. 62-1 (TBH's Responses To J&S's 2nd and 3rd Discovery Requests) at 2 (repeated at Dkts. 83-4 and 92-3). TBH also confirmed this in deposition. *See* Excerpt E1, below.

---

[2] The bracketed text is TBH-related information and need not be redacted.

> Q.   I'm going to mark as Exhibit 5 a
> document that's going to be TBH_ESI_00175.
>        (Deposition Exhibit 5 was marked.)
> Q.   Do you recognize this?
> A.   I do.
> Q.   And what is it?
> A.   This would be the license agreement
> between North American Machine and anybody that
> leased an attachment or apparatus from us.

**Excerpt E1**: From Ex. B (Dep. Tr. of Ryan Reed-Baum), at 6 lines 45:8-10.[3]

The signatures pages of Docket 177-7 further confirm that it is a representative copy of executed License Agreements. *See* Dkt. 177-7 (compare page 9 with pages 10 and 11; p. 1 with p. 12; and p. 9 with p. 13). And for the avoidance of doubt, the accompanied declaration of Ryan Reed-Baum further confirms that Docket 177-7 is representative of the actual agreements executed by licensees who signed it. *See* Fifth Reed-Baum Decl.

Because the form License Agreement that Harrington relied on is a proper representative copy of actual license agreements executed, his reliance on that agreement cannot justify excluding his opinion because experts are allowed to rely on copies of documents, including representative copies of documents, and even license agreements that are only comparable to others. *See*, *e.g.*, *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012) (finding no err in not excluding the testimony of a damages expert based on relying on non-exact copies and noting that the degree of comparability of licenses "are factual issues best addressed by cross examination and not by exclusion."); *Virnetx, Inc. v. Cisco Sys.*,

---

[3] "Exhibit 5" is referenced a few lines up. It is Exhibit C to this brief. It is the same, just a different copy of, the User License Agreement at Docket 177-7. The first nine pages are identical.

TBH'S OPPOSITION TO J&S'S MOTION TO EXCLUDE THE OPINIONS OF JAMES HARRINGTON (DKT. 176) -                                                                 3

*Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014) (finding no abuse of discretion by permitting testimony from damages expert regarding proper royalty rate based on allegedly comparable licenses).[4]

But if the Court disagrees, fairness will require the Court likewise exclude the opinions of J&S's expert (Bruce Denney) because he relied on exactly the same agreement for his analysis. *See* Dkt. 177-5 (Denney Report) at ¶ 41 ("Since 2009, TBH has entered into sub-licenses with at least five different companies for the use of the asserted patents: Kent Mohler Exteriors D&N Siding. C&T Siding, Xsiding Xteriors, and Cody Seamless, although complete copies of these license are not available for review.") (and further relying on the form license agreement for the basis of his entire report).

J&S's other comments are either inaccurate, irrelevant, or go to the weight versus admissibility of Harrington's opinions. J&S asserts that "Mr. Harrington confirmed at his deposition that he did not know that these alleged licenses were not with TBH, but that third-party NAMC was the actual alleged licensor." Dkt. 176-1 at 4. J&S fails to show how this is relevant.[5] The relevant point is that the licenses relate to the technology at issue. Plus, if this were a basis to exclude an expert's report, J&S's expert's report will need to be excluded too because he makes a similar statement. *See* Dkt. 177-5 ("Since 2009, TBH [*sic*][6] has entered into sub-licenses with at least five different companies for the use of the asserted patents"

---

[4] *Virnetx*'s holding is unremarkable and replete in the caselaw. That holding shows more than TBH needs to show because it relates to licenses involving technologies *other than* the patents-in-suit, whereas here, Docket 177-7 concerns the actual technology at issue. *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) ("This court has long required district courts performing reasonable royalty calculations to exercise vigilance when considering past licenses to technologies other than the patent in suit.").

[5] TBH does not agree that this is true. Harrington was unsure on the point.

[6] Read "NAMC."

J&S asserts: "Mr. Harrington admitted that he did not even know if the alleged licensees had even paid the $10,000 fee." Dkt. 176-1 at 4. But J&S fails to show how physical receipt of funds is relevant or how lack of knowing whether such funds were physically received is relevant. Plus, there is no reason to question that the fee was not paid.

J&S asserts that "Mr. Harrington's analysis that prior licensees agreed to pay a $10,000 licensing fees and 10% royalty rates, an opinion that is the foundation for his entire reasonably royalty analysis, is not grounded in fact." Dkt. 176-1 at 4. This is not the case. The $10,000 amount comes directly from the license agreement. *See* Dkt. 177-7, p. 2 at ¶ 3.[7] So does the 10% figure.[8] Those points go to weight, not admissibility. *See*, *e.g.*, *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852-4 (Fed. Cir. 2010), aff'd, 564 U.S. 91 (2011) ("When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility." . . . "Microsoft's quarrel with the facts Wagner used go to the weight, not admissibility, of his opinion.").

J&S asserts: "Mr. Harrington's analysis of the license agreements comes only from Mr. Reed-Baum, not the licenses themselves." Dkt. 176-1 at 5. However, Harrington corrected any ambiguities in deposition and confirmed that he had, in fact, reviewed the form License Agreement, which was "Exhibit 8" of the deposition. *See* Ex. A, p. 128-130 (Harrington confirming that he had considered the User License Agreement, that he had included its Bates range in his report, testifying that "I've seen these" at 129:21 and 130:7); Camacho Decl. at ¶ 4.

---

[7] There is a slight discrepancy between $10,000 and $10,500.

[8] The license calls for a $25 fee per square of siding sold. Dkt. 177-7, p. 2 at ¶ 4. At the time, such a square was being sold for about $250. Dkt. 175 at ¶ 62, FN 54 (initially filed under seal). 25 is 10% of 250.

J&S's statement that Harrington is relying only on Reed-Baum or that he is "parroting information" (p. 5) cannot be true because the key terms referenced in Harrington's report, such as the "$25 per Square" appear in the License Agreement. *See* Dkt.177-7 at ¶ 4.

J&S asserts: "Mr. Harrington's reasonably royalty analysis based on these alleged license agreements violates Rule 703 of the Federal Rules of Evidence" because he purportedly did not have the facts or data to assert that five parties entered into agreements. Yes, he did. He had the signature pages (Dkt. 177-7 at 10-11, 13). They match the signature page of the form License Agreement (p. 9). Ryan Reed-Baum represented that the form Agreement represented the actual agreements. The licenses paid royalties consistent with the terms of the form Agreement. See Dkt. 175-7. And TBH explained aspects of the above in its discovery responses. *See e.g.*, Dkt. 83-4 at 2 (referring to the Bates ranging starting at 000010 and naming the five licensees).

Finally, even if Harrington relied on Reed-Baum to receive key terms from the User License Agreements, J&S's argument fails because those terms are reflected in the User License Agreement. Any assertion that Harrington did not review actual license agreements is irrelevant because he reviewed a form agreement that faithfully represented all key terms. Reliance on copies of documents is not a proper basis to exclude an expert report.

### B.    Harrington's reasonable-royalty rate is not arbitrary.

J&S asserts: "Mr. Harrington's reasonable royalty rate is arbitrary and untethered to the facts in the case." Dkt. 176-1 at 6. J&S supports this argument by contending that Harrington's determined rate is higher than what others paid. But that is not a proper basis to exclude an expert's opinion. J&S cites *Wordtech*, but that case is not about excluding an expert's report. Rather, it found that a verdict was not supported by *allowed* evidence. *Wordtech Sys., Inc v. Integrated Networks Sols., Inc*., 609 F.3d 1308, 1320 (Fed. Cir. 2010). Harrington employs a sound and respected methodology of applying the *Georgia Pacific* factors. *See e.g.*, *Uniloc USA,*

*Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) ("This court has sanctioned the use of the Georgia–Pacific factors to frame the reasonable royalty inquiry."). The outcome of Harrington's analysis does not undermine his sound methodology.

Plus, Harrington explains in detail why the rate would be higher. Harrington tethered his analysis to the facts of this case by starting with the other Licensing Agreements. Dkt. 175-4 at ¶ 63 (initially filed under seal). He then explains that the cessation of licensing efforts in 2010—in favor of using exclusionary rights in an allowed monopolistic fashion and turning to manufacturing and selling—would have increased the rate. *Id.* at ¶ 67. As would J&S being a direct competitor in the same geographic region (*Id.* at ¶ 69), J&S's selling of ancillary products with its siding (*Id.* at ¶ 70), the long life of the patents (*Id.* at ¶ 72), the commercial success of products covered by the patents (*Id.* at ¶¶ 73-75), the favorable aesthetic appeal of the covered products (*Id.* at ¶¶ 76-78), J&S's favorable use of the patents (*Id.* at ¶ 80), and accounting for J&S's relevant sales (*Id.* at ¶¶ 83-87). All of those consider the specific facts of this case.

Any issue that J&S wishes to take with the outcome of Harrington's analysis goes to weight, not admissibility. J&S intimates that the outcome of a "hypothetical" negotiation—that presumes a valid and infringed patent—would have one who rejected an offer pay the same as those who accepted it. The seminal *Panduit* case soundly rejected that proposition.

> The setting of a reasonable royalty after infringement cannot be treated, as it was here, as the equivalent of ordinary royalty negotiations among truly "willing" patent owners and licensees. That view would constitute a pretense that the infringement never happened. It would also make an election to infringe a handy means for competitors to impose a "compulsory license" policy upon every patent owner.
>
> Except for the limited risk that the patent owner, over years of litigation, might meet the heavy burden of proving the four elements required for recovery of lost profits, the infringer would have nothing to lose, and everything to gain if he could count on paying only the normal, routine royalty non-infringers might have paid. As

said by this court in another context, the infringer would be in a
"heads-I-win, tails-you-lose" position.

*Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1158 (6th Cir. 1978).

J&S contends: "Perhaps most striking is the fact that Mr. Harrington was apparently
unaware that Joe Walrath previously paid Ted Baum $10,925 in 2009, when J and S purchased
the log attachment." Dkt. 176-1 at 7. Far from showing that the lack of awareness of this
purported fact would be a basis to exclude Harrington's opinion, J&S fails to explain how that
would be relevant to the royalty rate determined under a "hypothetical" negotiation analysis.
Harrington's analysis already contemplates an *expected* receipt of an initial payment. And in that
way, Harrington did consider the expectation of a licensee making an initial payment.
Harrington's opinions are tied to the relevant facts and circumstances of this case and the
hypothetical negotiations that would have taken place in light of them. Thus, his opinion is not
properly excludable.

### C.    Harrington's design-patent damages theory is not fatally flawed

Finally, J&S argues that "Mr. Harrington includes J and S's ancillary product sales
(windows, door frames, etc.) in his design patent damages calculation." Dkt. 176-1 at 8. J&S is
incorrect. For his design-patent analysis, Harrington carved out "Log Siding Revenue." As
highlighted in Excerpt E2 (below), Harrington's Attachment 300 includes a dedicated "Log
Siding Revenue"—to the exclusion of other revenue, such as "Window & Door Revenue,"
"Gutter Revenue," "Other Siding Revenue," etc.



| Located In J&S Siding Accounting Journal | Identified in J&S Siding Deposition | Log Siding Revenue | Window & Door Revenue | Gutter Revenue | Other Siding Revenue | Other Revenue | Total Invoiced Revenue |
|---|---|---|---|---|---|---|---|

**TB Holding Company LLC v. J&S Siding**
**Detailed of J&S Siding Revenue on Log Siding Jobs**
**Accused of Infringing 'D612 Patent**
**10/20/09 Through 10/20/23**

**Excerpt E2** –Harrington Report, Dkt. 175-4 at 37 (p. 1 of Attachment 300) (initially sealed)

The total of that column is an amount ending in "20."[9] Dkt. 175-4 at 30 (p. 2 of Attachment 300). That is the same amount reflected in the upper-left cell of the table just after ¶ 87, reproduced below in Excerpt E3. The presence of siloed columns in Excerpt E2—one being dedicated to log-siding revenue—confirms that Harrington carved out that revenue to be used in his design-patent damages calculation, as further confirmed by Excerpt E3 below.

| Assuming Infringement of 'D612 Patent | | | |
|---|---|---|---|
| | Total Sales | Sales Through 7/16 - 10/23 | Sales Using Fabricated Disks |
| Accused Sales | $ | | |
| Royalty Rate | | | |
| Running Royalty | $ | | |
| License Fee | | | |
| Total Reasonable Royalty | $ | | |

**Excerpt E3** – From Harrington's Report, Dkt. 175-4 at ¶ 87 (sealed).

---

[9] Truncating in view of initially sealed material.

TBH'S OPPOSITION TO J&S'S MOTION TO EXCLUDE THE OPINIONS OF JAMES
HARRINGTON (DKT. 176) -                                                                    9

Contrary to J&S's assertion, Harrington did not include ancillary-product sales (windows, door frames, etc.) in his design-patent-damages calculation. Thus, J&S's argument fails.

### III.     CONCLUSION

J&S's arguments are largely from silence. On top of being inaccurate, they fail to show why any purported failure to consider a given fact properly justifies excluding Harrington's report. In short, J&S asserts that Harrington failed to consider various facts without a complementary showing—apart from, at best, conclusory attorney argument—that such purported failures (disputed by TBH) justify the extraordinary act of excluding his entire report. For this additional reason, the Court should deny J&S's motion in its entirety.

Dated: 02/18/2025                         Respectfully submitted,

                                          */s/ Jesse J. Camacho*

                                          Jesse J. Camacho (admitted *pro hac vice*)
                                          PRACTUS, LLP
                                          3810 NE 95TH ST
                                          Kansas City, MO 64156
                                          816-343-4301
                                          Fax: 626-466-9014
                                          jesse.camacho@practus.com

                                          Anne Henderson Haws (ISB #10412)
                                          HOLLAND & HART LLP
                                          800 W. Main Street, Suite 1750
                                          Boise, ID 83702
                                          208-383-3937
                                          ahhaws@hollandhart.com


                                          *Counsel for Plaintiff, TB Holding*

34223503_v2