UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TB HOLDING COMPANY, LLC, a Colorado limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>J&S SIDING, an Idaho limited liability company,<br><br>Defendant. | Case No. 4:22-cv-00307-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court are TB Holding Company's Motion to Exclude the Reports and Testimony of Steve Cunningham and Bruce Denney (Dkt. 177), J&S Siding's Motion to Exclude the Damages Opinions of James Harrington (Dkt. 176), and J&S's Motion to Seal (Dkt. 174). For the reasons described below, the Court will grant TB Holding's motion, and grant in part and deny in part J&S's motions.

## BACKGROUND

The facts of this case are well known to both the parties and the Court, so the Court will only briefly summarize the underlying dispute. *See e.g.*, 91, 159, 173. TB Holding alleges J&S is infringing three of its patents: US Patent 9,283,604, US

**MEMORANDUM DECISION AND ORDER - 1**

Patent 9,732,529, and US Design Patent D602,612. *Am. Compl.*, Dkt. 134. The three patents all relate to Ted Baum's invention of a machine attachment that creates simulated log-siding. Both parties have retained experts to support their cases and have also moved to exclude the opinion and testimony of the other party's expert.

## LEGAL STANDARD

### A.  *Daubert* Motions

Federal Rule of Evidence 702 controls the admissibility of expert testimony. Fed. R. Evid. 702. Under this rule, a witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of opinion or otherwise" provided that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In other words, to be admissible an expert's testimony must "rest on a reliable foundation and [be] relevant to the task at hand." *Hyer v. City and Ctny of Honolulu*, 118 F.4th 1044, 1055 (9th Cir. 2024) (quoting *Elosu v. Middlefork Ranch Inc*, 26 F.4th 1017, 1024 (9th Cir. 2022)). Expert testimony is relevant if it

**MEMORANDUM DECISION AND ORDER - 2**

"will assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993) (citing Fed. R. Evid. 702(a)). The reliability inquiry is fact-specific and depends "on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) (internal citations omitted).

To guide this reliability analysis, the Supreme Court has outlined several factors to use when determining whether expert testimony is reliable. *Daubert*, 509 U.S. at 592–94. These factors include "1) whether a theory or technique can be tested; 2) whether it has been subjected to peer review and publication; 3) the known or potential error rate of the theory of technique; and 4) whether the theory or technique enjoys general acceptance within the relevant scientific community." *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000). Ultimately, the Rule 702 inquiry is a "flexible" one, and district courts have broad discretion. *Daubert*, 509 U.S. at 594; *Kumho*, 526 U.S. at 142.

### B.     Motion to Seal

The public has a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). The right of public access ensures that

courts have a measure of accountability and furthers the public interest in understanding the judicial process. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006). This right of access, however, is not absolute. *Id.* There is no public right to judicial records that have "traditionally been kept secret for important policy reasons." *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989).

There is a strong presumption in favor of public access to judicial records not "traditionally kept secret." *Kamakana*, 447 F.3d at 1178. The party seeking to seal a judicial record attached to a dispositive motion must "articulate compelling reasons supported by specific factual findings, that outweigh the general history of access and the public policies favoring disclosure." *Id*. at 1179 (cleaned up). In contrast, a "'good cause' showing under [Federal Rule of Civil Procedure] 26(c) will suffice to [seal] records attached to non-dispositive motions." *Id.* at 1180. The Ninth Circuit has cautioned that "dispositive" and "nondispositive" descriptors should "not morph into mechanical classifications." *Center for Auto Safety v. Chrysler Grp. LLC*, 809 F.3d 1092, 1098 (9th Cir. 2016). Instead, "the focus. . . is on whether the motion at issue is more than tangentially related to the underlying cause of action." *Id.* at 1099. Indeed, "the compelling reasons reasons[ ] standard applies to *most* judicial records." *Id.* at 1098 (internal quotation marks and citations

omitted) (emphasis in original).

## ANALYSIS

The Court will begin by addressing TB Holding's motion to exclude before turning to J&S's motion to exclude and, finally, J&S's motion to seal.

### A.     TB Holding's Motion to Exclude

TB Holding moves to exclude the reports and testimony of J&S's experts Steve Cunningham and Bruce Denny.

#### 1.  Mr. Cunningham's Report

TB Holding makes several arguments for the exclusion of Mr. Cunningham's testimony, beginning with its contention that it is not relevant. To be relevant, expert testimony must "logically advance[ ] a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995). J&S hired Mr. Cunningham to offer testimony on invalidity, however, the Court has already granted summary judgment of no invalidity. *See* Dkts. 159, 204. Since invalidity is no longer at issue in the case, Mr. Cunningham's report and testimony do not advance J&S's case. Accordingly, TB Holding's motion is granted with respect to Mr. Cunningham's report and testimony.

#### 2.  Mr. Denny's Report

Next, TB Holding moves to exclude Mr. Denny's report and testimony

**MEMORANDUM DECISION AND ORDER - 5**

because he is unqualified, did not prepare his report, and his testimony would not be helpful to the jury.

Beginning with TB Holding's first argument, the Court agrees that Mr. Denny is not qualified as an expert on patent damages. Rule 702 requires that any expert be "qualified . . . by knowledge, skill, experience, training or education." Fed. R. Evid. 702. The rule "contemplates a broad conception of expert qualifications" and is "intended to embrace more than a narrow definition of qualified expert." *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994). A witness, therefore, may be qualified as an expert upon demonstrating at a "*minimal foundation* of knowledge, skill, and experience." *Hangarter v. Provident Life & Accident Ins.*, 373 F.3d 998, 1016 (9th Cir. 2004) (quoting with emphasis *Thomas*, 42 F.3d at 1269).

Here, Mr. Denny has 35 years of experience in public accounting. Pl. Ex. B at 15:16–21; Pl. Ex. C at 25, Dkt. 177-5. He has served as a court appointed receiver for a number of cases ranging from "business matters to divorce" and understands "accounting and taxes and QuickBooks and margins and all those kind of things." *Id*; Pl. Ex. B at 7:13–14, 66: 20–21, Dkt. 177-4. He also has some experience in the construction industry. *Id.* at 81:12–17.

By the same token, Mr. Denny has no experience valuing patents. Pl. Ex. B

at 43:3–22, Dkt. 177-4. He has never prepared a patent damages report or served as an expert in a patent case. Pl. Ex. B at 52:3–8; 62:16–18, Dkt. 177-4. Of course, there must be a first time for any expert. That said, Mr. Denny conceded that he is not an expert on patent damages and appears not to have made any effort to obtain the requisite expertise before preparing his report. Pl. Ex. B at 51:19–52:2; 63:2–10, Dkt. 177-4. Indeed, when asked about the concept of a reasonable royalty, Mr. Denny stated that he did not know what it meant, but had heard it before. *Id.* at 50:25–51:9. This concession, despite the fact that his report offers an opinion on what a reasonable royalty would be, is obviously of concern. Pl. Ex. C at ¶ 33 (describing scope of work).

The Federal Circuit has repeatedly found such concessions warrant exclusion of an expert's testimony on patent damages. For example, in *Abbott Laboratories v. Brennan*, the Federal Circuit upheld a district court's ruling "that [the expert] could not testify as an expert on the issue of royalties [because he] had stated that he was not an expert on patent royalties, and that he had no prior experience if analyzing the market for a medical device, or any other product." 952 F.2d 1346, 1351–52 (Fed. Cir. 1991); *see also State Contracting & Engineering Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1073 (Fed. Cir. 2003). Exclusion in these situations makes sense because "an expert conducting a reasonable royalty

**MEMORANDUM DECISION AND ORDER - 7**

calculation should have experience placing value on patents and license agreements." *Bowling v. Hasbro, Inc.*, No. 05-229S, 2008 WL 717741, at *3 (D.R.I. Mar. 17, 2008).

On the current record, the Court finds that Mr. Denny is not qualified to testify on patent damages. His qualifications, while sufficient to qualify him as an expert in other cases, are insufficient here because J&S has presented no evidence that Mr. Denny has any knowledge, skill, or experience in the area of patent damages or valuing patents. *See State Contracting & Engineering Corp*, 346 F.3d at 1073 (finding no error where district court excluded expert testimony "in light of" expert's "statement that he had no experience in placing a value on a patent and did not have any knowledge regarding reasonable royalties for construction-related patents."). Moreover, J&S has not explained why such qualifications would not be required here. Accordingly, TB Holding's motion is granted.

### B.    J&S' Motion to Exclude

Turning now to the first of J&S's two motions. J&S moves to exclude the opinions and testimony of TB Holding's damages expert, James Harrington. Before considering the merits of the motion to exclude, the Court will briefly address J&S's oral motion to strike the declaration of Ryan Reed-Baum and the accompanying exhibit submitted by TB Holding.

**MEMORANDUM DECISION AND ORDER - 8**

### 1. Oral Motion to Strike

During the hearing on the parties' *Daubert* motions, counsel for J&S made an oral motion to strike the declaration of Mr. Reed-Baum and the accompanying exhibit submitted by TB Holding as well as anything that relies on the "missing pages" of the license agreements. Dkt. 201. The Court will deny the motion.

J&S argues the declaration and exhibit should be struck because this information was not disclosed in discovery and, as a result, J&S never had the opportunity to depose any witness about it. This argument does not appear to be supported by the record. For one, the document attached to Mr. Reed-Baum's declaration, was produced during discovery and cited to repeatedly throughout this litigation. *See* Dkt. 89 at 5 (stating form agreement was initially produced on November 7, 2022); *see also* Dkt. 89-1 (attaching form license as exhibit). The Court sees no reason to strike the declaration based upon counsel's arguments in favor of the oral motion. The agreement was timely produced, and J&S had the opportunity to depose Mr. Reed-Baum or any other appropriate party during discovery. Given the resolution of J&S's *Daubert* motion, the decision not to strike the declaration is likely irrelevant. To the extent that is not the case, J&S may renew the motion to strike but must clearly explain the basis for its motion.

### 2. Reasonable Royalty Rate

**MEMORANDUM DECISION AND ORDER - 9**

J&S argues that Mr. Harrington's reasonable royalty calculation should be excluded because it is based on "agreements he never saw" and because the "calculations are arbitrary and untethered to the facts." Dkt. 176 at 1. The Court agrees with J&S's second argument. Mr. Harrington opines that a 16.5% licensing fee and $16,500 downpayment is a reasonable royalty rate. *Ranks Decl.*, Ex. 4 at ¶ 85, Dkt. 175-2. This departs, significantly, from the standard 10% licensing fee and $10,000 downpayment paid by all other licensees. *Id.* at ¶ 63. Assuming for the purposes of this motion that the information about the licenses relied upon by Mr. Harrington is sufficiently reliable, his reasonable royalty opinions must still be excluded.

There are generally three ways to calculate a reasonable royalty rate: from "an established royalty, the infringer's profit projections for infringing sales, or a hypothetical negotiation between the patentee and infringer based on the factors in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970)." *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010). Mr. Harrington opted for the third method, a hypothetical negotiation, which "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301,

**MEMORANDUM DECISION AND ORDER - 10**

1324 (Fed. Cir. 2009). The Federal Circuit has explained:

> When an expert employs the *Georgia-Pacific* factors, reciting each factor and making a conclusory remark about its impact on the damages calculation before moving on does no more than tell the jury what factors a damages analysis could take into consideration. When performing a *Georgia-Pacific* analysis, damages experts must not only analyze the applicable factors, but also carefully tie those factors to the proposed royalty rate. While mathematical precision is not required, some explanation of both why and generally to what extent the particular factors impact the royalty calculation is needed.

*Exmark Manufacturing Co. Inc. v. Briggs & Stratton Power Products Group, LLC*, 879 F.3d 1332, 1350 (Fed. Cir. 2018) (cleaned up).

Mr. Harrington uses the $10,000 upfront payment and 10% running royalty as a starting point for his analysis. From there, he ticks through each of the *Georgia-Pacific* factors, concluding that a majority of factors have an "upward influence" on the reasonable royalty rate. *Ranks Decl.*, Ex. 4 at ¶¶ 59–86, Dkt. 175-2 (concluding factor 2 has a neutral influence, factor 3 has a slight downward influence and factors 4 through 10 have an upward influence). He then, rather summarily, concludes that the parties would have agreed to a $16,500 up front payment and 16.5% running royalty rate. *Id.* at ¶ 86. These amounts are a 65% increase in the standard payment and royalty rates for all other licensees.

Despite Mr. Harrington's citation to each of the *Georgia-Pacific* factors, it is difficult to discern how he reaches either the $16,500 payment or the 16.5%

**MEMORANDUM DECISION AND ORDER - 11**

royalty rate. The Federal Circuit's decision in *Exmark* is instructive here. In *Exmark*, the Federal Circuit determined that the district court erred by admitting Exmark's expert report, which concluded that the parties would have agreed to a 5% reasonable royalty rate. *Exmark*, 879 F.3d at 1349. The expert, like Mr. Harrington, conducted a "superficial recitation of the *Georgia-Pacific* factors, followed by conclusory remarks" about what constituted a reasonable royalty rate. *Id.* at 1350. The Federal Circuit concluded "[i]t is not enough for an expert to simply assert that a particular royalty rate is reasonable in light of the evidence without tying the proposed rate to that evidence." *Id.* at 1351. Instead, "'[w]hen performing a *Georgia-Pacific* analysis, damages experts must not only analyze the applicable factors but also carefully tie those factors to the proposed royalty rate." *Id.* at 1350 (quoting *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 31 (Fed. Cir. 2012)).

Mr. Harrington's analysis suffers from the same problem as the expert in *Exmark*. He conducts an analysis of the *Georgia-Pacific* factors and even indicates, generally, the impact of each factor on the royalty rate. He, however, does not offer any explanation for "how much the rate should have been increased" based on each factor or even, relatively, how much weight should be accorded each factor. *Whitserve*, 694 F.3d at 30. Reviewing Mr. Harrington's report and analysis,

**MEMORANDUM DECISION AND ORDER - 12**

the Court is left to guess where the $16,500 and 16.5% figures came from. Just as in *Exmark*, the failure to connect the evidence to the royalty rate warrants exclusion. Mr. Harrington's general statement as to what impact each factor would have on the resulting royalty rate does not change this conclusion because he does not connect those general directions to the 16.5% royalty rate or $16,500 payment. *See Speedfit LLC v. Woodway USA, Inc.*, No. 13-CV-1276 (KAM)(AKT), 2019 WL 1436306, at *8 (E.D.N.Y. Mar. 29, 2019). Indeed, Mr. Harrington seems to have "merely addressed the *Georgia-Pacific* factors in light of the facts and then plucked the . . . royalty rate out of nowhere." *Id.* at 1351. This analysis is insufficient to meet the reliability requirements of Rule 702. Accordingly, J&S's motion to exclude is granted with respect to Mr. Harrington's reasonable royalty opinions.

### 3. Design Patent Damages

Next, J&S argues that Mr. Harrington's design patent damages opinions should be excluded because his methodology is flawed and artificially inflates the damages amount. Principally, J&S points to Mr. Harrington's inclusion of J&S's "ancillary product sales"—things like windows and door frames—in his design patent damages calculations. Dkt. 176-1 at 8–9. TB Holding, however, clarified that these sales are excluded from the damages calculation. Dkt. 185 at 8–9. J&S

appears to now agree that those sales are excluded and instead asks the Court to "hold TB[ Holding] to is word at trial" and prevent any testimony regarding the ancillary sales. Dkt. 193 at 4. Given this issue is moot, the Court will deny the motion to exclude. To the extent J&S's concerns are borne out at trial and Mr. Harrington does testify regarding these ancillary sales, the Court will address any objection at that time.

### C. J&S's Motion to Seal

Finally, J&S seeks to seal several exhibits in support of its *Daubert* motion. Because the motion is "more than tangentially related to the underlying cause of action," the Court must find compelling reasons to place the documents under seal. *Ctr. for Auto Safety*, 809 F.3d at 1099 (noting motions in limine "are strongly correlative to the merits of a case"). "Under this stringent standard, a court may seal records only when it finds 'a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture.'" *Id.* at 1097–98 (quoting *Kamkana*, 447 F.3d at 1179). "The court must then 'conscientiously balance[ ] the competing interests of the public and the party who seeks to keep certain judicial records secret.'" *Id.* (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).

At the outset, both parties and the Court agree that Exhibits 2, 5, and 7 can

be made public because they do not contain confidential information concerning J&S. As such, the Court denies the motion to seal Exhibits 2, 5, and 7 and J&S shall refile those Exhibits. The remaining three exhibits are addressed below.

### 1. Exhibit 1

Exhibit 1 contains both excerpts from James Harrington's deposition and Exhibit B to that deposition, which is a user license agreement. TB Holding has confirmed that Exhibit B to the deposition concerns information it produced and may be filed publicly. Accordingly, J&S shall refile the Exhibit B publicly.

As for the deposition transcript, the Court finds that compelling reasons exist to seal some, but not all, of the transcript. Indeed, most of the material in the deposition concerns Mr. Harrington's methodologies rather than confidential information. Sealing is not warranted when excerpts from an expert's deposition contains no specific confidential financial information, and the testimony is better characterized as addressing generalities, hypotheticals, and expert methodologies. *Vamsi Nallapati & IGM Surfaces, LLC v. Justh Holdings, LLC*, 637 F. Supp. 3d 357, 366 (E.D.N.C. 2022) (finding not even good cause to seal similar material). That said, there are compelling reasons to redact 85:1–2 as it pertains to J&S's confidential revenue information. *See Doe v. Meta Platforms, Inc.*, No. 22-CV-03580-WHO, 2022 WL 17970394, at *2 (N.D. Cal. Dec. 21, 2022). J&S's motion

**MEMORANDUM DECISION AND ORDER - 15**

to seal Exhibit 1 is granted in part and J&S shall re-file Exhibit 1 publicly with lines 85:1 –2 redacted.

### 2. Exhibit 4

Next, J&S moves to seal Exhibit 4, which contains James Harrington's expert report. It argues the report contains extensive confidential financial information about J&S. While some sections of the report contain financial information that should be sealed, J&S fails to show that sealing the entire document is appropriate. "Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning" will not suffice to seal an entire document. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). That said, the Court finds compelling reasons to redact paragraphs 39, 42, 54, 57, and 70, as well as file under seal attachments 300, 301, 302, 400, 401, 500, 501, 502, 600, 601, 700, 701, 800, and 801. J&S has made a sufficient showing of particularized harm based upon the potential use of this information by its competitors. *Doe*, 2022 WL 17970394, at *2. Accordingly, J&S's motion to seal Exhibit 4 is granted in part and it shall re-file Exhibit 4 publicly with redactions consistent with this order.

### 3. Exhibit 6

Finally, J&S also moves to seal Exhibit 6, which contains two attachments

**MEMORANDUM DECISION AND ORDER - 16**

from Bruce Denney's expert report. For similar reasons as stated above, the Court agrees with J&S that this information may be properly sealed. Both attachments contain sensitive financial business information about J&S. The first attachment is a chart summarizing J&S's revenue on accused log siding side from 2016 to 2023. The second attachment is a profit and loss report from 2016 to 2023. Both reports include a full break down of J&S's financials, details of customer names, siding jobs, and specific invoice charges relating to alleged revenue. Dkt 175. The Court, therefore, grants the motion to seal Exhibit 6.

## ORDER

**IT IS ORDERED that:**

1. Plaintiff's *Daubert* Motion (Dkt. 177) is **GRANTED**.

2. Defendant's *Daubert* Motion (Dkt. 176) is **GRANTED IN PART AND DENIED IN PART**.

3. Defendant's Motion to Seal (Dkt. 174) is **GRANTED IN PART AND DENIED IN PART.** J&S must refile Exhibits 1 and 4 as described in this Memorandum Decision and Order.



DATED: July 29, 2025

B. Lynn Winmill
U.S. District Court Judge