UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TB HOLDING COMPANY LLC, a Colorado limited liability company, | Case No. 4:22-cv-00307-BLW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| J&S SIDING COMPANY, LLC, an Idaho limited liability company, | |
| Defendant. | |

## INTRODUCTION

TB Holding Company, LLC alleges J&S Siding, LLC is infringing three of its patents: U.S. Patent No. 9,283,604 ("the '604 Patent"); U.S. Patent No. 9,732,529 ("the '529 Patent"); and U.S. Patent No. D602,612 ("the 'D612 Patent"). All three patents relate to metal simulated log siding designed to resemble natural logs and a machine attachment used for making it. The '604 patent covers a log-forming attachment and apparatus for making the log siding, the '529 patent covers the log siding itself, and the 'D612 patent covers the ornamental design of the siding. TB Holding alleges J&S Siding infringed the three patents by making and selling its curved metal log siding meant to resemble natural logs.

MEMORANDUM DECISION AND ORDER - 1

Trial is set to begin April 13, 2026. The parties have each filed various motions in limine, and J&S has filed an objection to TB Holding's Trial Brief, which makes clear the parties contemplate two entirely different trials. Through this decision, the Court hopes to make clear how the trial will proceed.  For the reasons set forth below, the Court will grant J&S's motions in limine to exclude pre-2016 financial evidence and evidence of non-accused siding, and defer ruling on J&S's motion to exclude NAMC's prior license agreements. As for TB Holding's motions in limine, most critically, the Court will grant its request to exclude any evidence relating to J&S's waived affirmative defenses, or any undisclosed non-infringement theories. Likewise, J&S will be precluded from suggesting that the asserted patents are invalid or unenforceable, that TB Holding improperly changed its theory of liability, or that TB Holding's claims rest entirely on a non-existent second "pirated" attachment. The remainder of the Court's rulings on TB Holding's motions in limine are set forth below. With this ruling, the Court anticipates that the trial will be a simple matter which focuses solely on the questions of infringement and damages.

## LEGAL STANDARD

### A. Motions in Limine

Motions in limine are a "procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Like other pretrial motions, they are "useful tools to resolve issues which would otherwise clutter up the trial." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017). Rulings on motions in limine are preliminary opinions that are

MEMORANDUM DECISION AND ORDER - 2

"entirely within the discretion of the district court." *Id.*; *see Luce v. United States*, 469

U.S. 38, 41 n.4 (1984). Further, such rulings are provisional and therefore "not binding

on the trial judge [who] may always change his mind during the course of a trial." *Ohler*

*v. United States*, 529 U.S. 753, 758 n.3 (2000).

Accordingly, at trial, the Court will, within reason, entertain objections on

individual proffers as they arise, even though the proffer falls within the scope of a

denied motion in limine. *See Luce*, 469 U.S. 38 at 41–42 ("Indeed even if nothing

unexpected happens at trial, the district judge is free, in the exercise of sound judicial

discretion, to alter a previous in limine ruling.").  However, the Court does not anticipate

stopping the trial to repeatedly rule on the same issues it has ruled on here and, where

necessary, definitively reaffirmed its ruling during trial.  At that point, the proper

procedure is for counsel to ask for a continuing objection, so that they need not restate the

objection to preserve the record on appeal.

### B.  Federal Rules of Evidence 401, 402, & 403

The rules governing relevant evidence, Federal Rules of Evidence 401, 402, and

403, are often central in deciding motions in limine. Rule 401 provides that evidence is

relevant if: (a) it has any tendency to make a fact more or less probable than it would be

without the evidence; and (b) the fact is of consequence in determining the action. Rule

402 provides that, with certain exceptions, relevant evidence is admissible. Rule 403

provides that the Court "may exclude relevant evidence if its probative value is

substantially outweighed by a danger of one or more of the following: unfair prejudice,

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Ev. 403.

Unfair prejudice refers to an undue tendency to influence a decision on an improper basis, such as an emotional response, or with evidence designed to elicit a response from the jurors that is not justified by the evidence. *See United States v. Ellis*, 147 F.3d 1131, 1135 (9th Cir. 1998). Even if there is only a modest likelihood of unfair prejudice or a small risk of misleading the jury, evidence that presents only slight probative value must be excluded. *See United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992).

## ANALYSIS

### A.  J&S's Motion to Strike

As a threshold matter, the Court will address J&S's motion to strike TB Holding's response to its objection or response to TB Holding's trial brief. On March 23, 2026, J&S filed a "response" to TB Holding's Trial Brief. Dkt. 230-1. On March 25, TB Holding promptly filed a response to J&S's filing to preserve its arguments for the record. J&S moves to strike TB Holding's response as improper under Local Rule 16.3 because it is an untimely "sur-reply," it improperly addresses J&S's timely response to TB Holding's trial brief, and it violates this Court's page limit rules.

Local Rule 16.3 contemplates the filing of objections to trial briefs within seven days from the filing of the trial brief, which are not to exceed ten pages. It does not necessarily contemplate a response or reply to this objection. J&S is therefore correct that TB Holding's filing did not technically comply with Local Rule 16.3. Nonetheless, the

MEMORANDUM DECISION AND ORDER - 4

Court will deny the motion to strike in the interests of allowing the record to be fully developed. Any prejudice to J&S has been mitigated by the Court's invitation to the parties to submit supplemental briefing on the issues presented in the trial briefs and the parties' motions in limine. The Court has reviewed and considered all the parties' filings.

## B. TB Holding's Motions in Limine

### 1. Motions in Limine Nos. 1, 5, and 8: Waived Affirmative Defenses; Undisclosed Non-Infringement Theories; and Second Pirated Attachment.

TB Holding first seeks to preclude any evidence, arguments, or theories relating to J&S's waived affirmative defenses, including all permission-based defenses. TB Holding says this trial should be "laser focused" on only two issues: (1) whether J&S's accused log siding falls within the scope of TB Holding's patent claims; and (2) if so, quantifying damages. *See* Dkt. 225 at 2. It maintains invalidity is not at issue; all J&S's affirmative defenses have been excluded; and TB Holding's claim for willful infringement has been dropped.

J&S envisions an entirely different trial focused on whether TB Holding authorized its use of the patented invention. It insists it was "explicitly granted permission" to use the log attachment it purchased; it never made a second "pirated" attachment; and therefore TB Holding cannot prove infringement. J&S casts TB Holding's arguments to the contrary as "an attempt to abdicate its burden of proof at trial," Dkt. 229 at 7, and argues, in any event, it "has numerous properly pled defenses," which entitle it to argue TB Holding explicitly authorized its use of the purchased log attachment to practice its patents.

MEMORANDUM DECISION AND ORDER - 5

These are not new arguments. J&S has made different iterations of these same arguments on at least six separate occasions: in response to TB Holding's first and second motions for partial summary judgment[1]; in support of its motion to clarify[2]; in support of its motion to dismiss[3]; in opposition to TB Holding's motion to strike its amended answer[4]; and in support of its own motion for summary judgment.[5] On each occasion, the Court rejected J&S's argument that TB Holding's infringement claims rested entirely on the existence of a "second pirated attachment" and further ruled that J&S had waived any permission-based affirmative defense. *See, e.g.,* Dkt. 91 at 6 (rejecting J&S's argument that TB Holding only alleges infringement based on the existence of a second "pirated"

---

[1] *See* Dkt. 49 at 3-11 (arguing TB Holding's failure to establish a "second pirated attachment" was fatal to its claims, and J&S had an implied license to use the patents); Dkt. 60 (arguing J&S has an implied license based on equitable estoppel and its "unrestricted purchase" of the attachment, and it had a right to use "spare-part discs" under the repair doctrine); Dkt. 83 at 9 (arguing J&S has asserted "a variety of defenses in its answer," including unclean hands, waiver, laches, acquiescence and consent, and estoppel, which, if proven, would establish TB's patents are unenforceable).

[2] *See* Dkt. 98-1 at 3-6; 7-8; 8-10 (arguing TB Holding's complaint only alleges infringement through the use of a second pirated attachment, J&S's affirmative defense of estoppel was pled in its answer, and J&S should be allowed to amend its answer to allege affirmative defenses of implied license and repair if "the Court is going to allow TBH to reimagine its Complaint to allege infringement for instances when the legally purchased attachment is used"); Dkt. 115 (same).

[3] *See* Dkt. 140-1 (arguing J&S "has permission to use the assigned patents" and seeking dismissal of TB Holding's amended complaint because TB Holding cannot rely on the "false" allegation that J&S used the assigned patents "without permission"); Dkt. 148 (arguing "TBH can no longer assert that J and S's use of the Assigned Patents is 'without permission,' which was the guise it used to bring the lawsuit in the first instance" and arguing again that TB Holding's patent claims fail because it cannot show J&S has ever had a second attachment).

[4] *See* Dkt. 189 (arguing TB Holding changed the theory of its case when it learned J&S purchased the log attachment outright, authorizing J&S's use of the first attachment, and J&S did not make a second attachment).

[5] *See* Dkt. 178-1 (arguing TB Holding's complaint rests entirely on the allegations that J&S made a second pirated attachment and its use of that pirated attachment is without TB Holding's permission, but the facts show J&S never made or used a second attachment, and all use of the purchased log attachment was with TB Holding's express permission, and therefore J&S motion for summary judgment of no infringement should be granted).

**MEMORANDUM DECISION AND ORDER - 6**

attachment); Dkt. 204 at 4 ("J&S argues that it has permission to use the log-siding attachment. This argument is a repackaged version of its implied license defense, which the Court has already made clear is waived."); *see also* Dkts. 143, 203.

J&S nonetheless implores the Court to allow it to present evidence that it was authorized to use the log attachment it purchased from Ted Baum, arguing it has not waived all its affirmative defenses. J&S concedes that its implied license, patent exhaustion, and repair defenses have been deemed waived but argues it may still assert the additional defenses of waiver, laches, consent, estoppel, and unclean hands, which it has pled in its answers since its first iteration filed in August 2022, and which the Court has never addressed. While J&S may have asserted these defenses in its answers, it failed to sufficiently plead, preserve, or develop them.

First, J&S's affirmative defenses are single-sentence conclusory recitals supported by few, if any, facts. For example, J&S's fourth affirmative defense merely asserts that TB Holding's claims "should be barred pursuant to the doctrines of waiver, laches, acquiescence, consent and/or estoppel." Its fifth affirmative defense is equally threadbare, stating only that "TB Holding's claims are barred based upon the doctrine of unclean hands." Dkt. 17; Dkt. 205. J&S's third affirmative defense contains a few more facts, asserting TB Holding "should be barred and estopped from pursuing its actions herein, based upon the prosecution history, actions and statements by Plaintiff and its principal Ted Baum." Even so, none of J&S's pled affirmative defenses provide the fair notice Rule 8(c) demands.

**MEMORANDUM DECISION AND ORDER - 7**

J&S could have cured these deficiencies by seeking leave to amend its answer with supporting factual allegations. The Court told J&S as much. See Dkt. 91 at 14 n.5 (advising that "[t]he proper method to assert any additional affirmative defense is through a motion to amend"). J&S's own Fourth Answer acknowledged it "intends to file a motion to further amend its Answer for good cause shown." Dkt. 205 at 1. But J&S never filed that motion. See Dkt. 115 (J&S conceding "to date J and S has not filed a motion to amend."). More fundamentally, it never raised them in response to either of TB Holding's two motions for partial summary judgment or in support of its own motion, effectively abandoning them. *See Diversey Lever, Inc. v. Ecolab, Inc.*, 191 F.3d 1350, 1353 (Fed. Cir. 1999) ("an affirmative defense must be raised in response to a summary judgment motion, or it is waived.").

Second, and more critically, these so-called additional defenses are essentially repackaged versions of previously rejected arguments and waived defenses. The factual predicate for each is identical: J&S purchased a log attachment from Ted Baum, Ted Baum authorized J&S to use it, J&S never made a second "pirated" attachment, and therefore TB Holding cannot now claim infringement. Whether that theory is called "consent," "acquiescence," "estoppel," or something else, it remains an argument that TB Holding authorized J&S's use of the patented technology. Putting a new label on a waived defense does not revive it.

As for unclean hands, J&S raises it for the first time on the eve of trial, and not even in its own trial brief but in its objection to TB Holding's trial brief. Like its other affirmative defenses, J&S's unclean hands defense is a single, conclusory statement with

**MEMORANDUM DECISION AND ORDER - 8**

no supporting facts, and J&S never raised it to support or oppose the three summary judgment motions filed in this case. But even assuming J&S adequately preserved this defense, J&S has failed to show the alleged litigation misconduct rises to the level necessary to merit invocation of the clean hands doctrine to bar TB Holding's claims. J&S maintains TB Holding improperly changed its theory of liability without amending its complaint only once it learned that J&S never made a second "pirated" attachment. This is simply another version of the same argument the Court has repeatedly rejected. *See* Dkt. 91 at 6-7, Dkt. 143 at 2-3, Dkt. 204 at 4 (explaining this argument "fares no better on a third try"). It fares no better now.

The Court is also unpersuaded by J&S's suggestion that TB Holding bears the burden of proving J&S acted "without authority" as an element of its infringement case. An infringement analysis entails only two steps: (1) construing the claims to determine the scope of the patent; and (2) determining whether the construed claims encompass the accused product. *See, e.g., Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996). There is no third step requiring the patent owner to prove lack of authorization.

On the contrary, authorization is an affirmative defense that the accused infringer must prove. *See, e.g., Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338 (Fed. Cir. 2000) (patentee bore the burden of showing coverage by the patent; accused infringer bore the burden of establishing its defense of authority); *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 36 (Fed. Cir. 2024) (collecting cases holding that the existence of a license is an affirmative defense); *Keurig, Inc. v. Sturm Foods, Inc.*, 732 F.3d 1370, 1373

**MEMORANDUM DECISION AND ORDER - 9**

(Fed. Cir. 2013) ("Patent exhaustion is an affirmative defense to a claim of patent infringement."). J&S cites *Hewlett-Packard Co. v. Repeat-O-Type Stencil Manufacturing Corp.*, 123 F.3d 1445, 1450 (Fed. Cir. 1997), for the proposition that infringement requires acts done "without authority," but that case does not hold that the patentee bears the burden of proving lack of authority as part of its prima facie case. If it did, implied license, exhaustion, and consent would not be characterized as affirmative defenses, which by definition presuppose a prima facie case has been established.

Beyond relevance, the Court has significant practical concerns under Rules 401 and 403. Evidence that J&S "purchased" the log attachment or had "permission" to use it is relevant only to J&S's waived affirmative defenses. But lay jurors know nothing about patent exhaustion or implied license. If J&S tells the jury it bought the machine and had permission to use it, the natural inference is that a buyer should be free to use what it purchased however it likes. That inference, while intuitive, ignores the complexities of patent law. TB Holding would then be forced to educate the jury on those complexities, the trial would be consumed by collateral issues the parties briefed years ago, and the proceedings would be extended substantially. That is precisely the kind of unfair prejudice and jury confusion Rule 403 is designed to prevent. Accordingly, evidence or argument that TB Holding granted permission to J&S to use the log siding attachment or to fabricate the accused log siding is excluded.

Along the same lines, as pertinent to TB Holding's fifth and eighth motions in limine, J&S may not offer argument or testimony relating to any undisclosed non-infringement theory and may not suggest or insinuate that TB Holding improperly

**MEMORANDUM DECISION AND ORDER - 10**

changed the theory of its case or that TB Holding's infringement claims fail absent proof J&S made a second "pirated" attachment.

The Court, however, will defer ruling on whether J&S may offer evidence related to its purchase of the log attachment to show what royalty would have resulted from a hypothetical license negotiation between TB Holding and J&S. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1312 (Fed. Cir. 2011) (explaining a reasonable royalty, which is the predominant measure of damages in patent infringement cases, "is often determined on the basis of a hypothetical negotiation, occurring between the parties at the time that infringement began").  However, if the Court ultimately permits such evidence, a careful limiting instruction will be given to the jury that the evidence may be considered only as it may inform the jury's verdict as to what the value of the invention is.  That same instruction would make clear that the evidence may not be used for any other purpose, such as a claim that J&S's use of the log attachment was authorized or licensed.

### 2.  Motion in Limine No. 2: Excluded *Daubert* Testimony

TB Holding next seeks to preclude J&S from offering any testimony or exhibits that the Court excluded in its *Daubert* order. The Court excluded the testimony and reports of J&S's experts, Steven Cunningham and Bruce Denney, *see* Dkt. 206, but J&S included Mr. Cunningham on its original witness list and has identified exhibits included in Mr. Cunningham's report. As J&S has removed Mr. Cunningham from its witness list and states it will not seek to admit any expert testimony that has been excluded, the Court finds this motion is moot. J&S, however, is admonished that it will not be allowed to

MEMORANDUM DECISION AND ORDER - 11

admit testimony or evidence that the Court has previously excluded. Further, if J&S intends to introduce exhibits or information referenced in Mr. Cunningham's report, or that refer to Mr. Cunningham, it must alert the Court prior to its introduction to allow the Court to rule on its admissibility.

### 3.  Motions in Limine Nos. 3 and 4: Invalidity and Unenforceability

In its third and fourth motions in limine, TB Holding seeks an order preventing J&S from intimating, arguing, or introducing any evidence that TB Holding's patents are invalid or unenforceable. J&S responds that it does not intend to present such evidence. The Court therefore finds these motions are moot with the admonishment that J&S is precluded from offering any evidence that the patents are invalid or unenforceable, including any evidence related to Mr. Cunningham's excluded expert testimony or any evidence that only bears on the invalidity or enforceability of the patents.

### 4.  Motion in Limine No. 6: Comparison "Prior Art"

TB Holding's sixth motion concerns J&S's use of comparison prior art at trial. TB Holding argues that any prior art evidence should be excluded because J&S has not asserted an invalidity defense. But prior art serves a distinct purpose in design patent infringement cases. Under the ordinary observer test, the factfinder assesses "whether an ordinary observer, familiar with the prior art designs, would be deceived into thinking that the accused product is the same as the patented design." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 681 (Fed. Cir. 2008) (en banc). Prior art in this context helps define the scope of the claimed design and "creates a backdrop against which 'the claimed and accused designs are … likely to be viewed as similar.'" *Id.* at 677. This use

**MEMORANDUM DECISION AND ORDER - 12**

of prior art is not the same as challenging validity. Accordingly, TB Holding's sixth motion in limine is denied. J&S may introduce prior art for purposes of the ordinary observer comparison, but the Court will not permit J&S to argue or intimate that TB Holding's design patent is invalid.

### 5. Motion in Limine No. 7: Deductible Expenses

Under 35 U.S.C. § 289, TB Holding seeks J&S's profits for sales of its simulated log siding that infringes TB Holding's design patent. TB Holding bore the initial burden of production to establish J&S's total revenue. Then, "once the plaintiff satisfies its initial burden of production, the burden of production shifts to the defendant to come forward with evidence to support any alternative article of manufacture and to prove any deductible expenses." *Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2017 WL 4776443, at *15 (N.D. Cal. Oct. 22, 2017).

TB Holding argues it met its burden "by showing J&S's revenue on a per-job basis, as to the specific jobs, and tailored to the specific implements that are accused of infringing" but J&S did not meet its burden to show its deductible expenses. *See* Dkt. 224 at 10. Rather, according to TB Holding, J&S has consistently maintained it does not track its deductible expenses and therefore was unable to produce such information. TB Holding therefore seeks to preclude J&S from offering evidence at trial showing its deductible expenses. J&S responds that it produced all of its Quickbooks data showing its expenses, which TB Holding's expert reviewed, and it should be entitled to elicit testimony about expenses at trial.

This is a difficult motion to resolve with specificity. It would seem fundamentally unfair for J&S to deny that it tracks or has records of deductible expenses in response to Interrogatories or questions posed during deposition. On the other hand, if documents setting forth the amount of deductible expenses (including Quickbook entries) were provided to TB Holding before the close of discovery, then the Court will permit J&S to use such evidence at trial. At this point, the Court cannot resolve that dispute. However, the Court will indicate that it will not permit such evidence, unless J&S makes a proffer outside the presence of the jury showing their timely disclosure of the proffered evidence.

### 6. Motion in Limine No. 9: Sales or Financial Information of TruLog Siding

J&S has identified an exhibit that includes the TruLog Siding's revenue information, which TB Holding contends is highly confidential and not relevant to any remaining issues in this case. TB Holding therefore seeks to exclude this information. The Court will provisionally grant this motion but may reconsider this ruling if it becomes clear that such information is relevant to damages or some other issue. If J&S feels that the TruLog Siding evidence has become relevant, it should raise the issue outside the presence of the jury and allow the Court to rule, prior to such evidence being shown to the jury.

### 7. Motion in Limine No. 10: Lack of Patent Marking

TB Holding next seeks to preclude J&S from raising a marking defense at trial, arguing that J&S did not adequately plead or develop this defense. A patentee who makes or sells a patented article must mark its articles or notify infringers of its patent in order to recover damages. 35 U.S.C. § 287(a). This obligation extends to a patentee's licensee.

MEMORANDUM DECISION AND ORDER - 14

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1366-67 (Fed. Cir. 2017). The patentee bears the burden of proving its compliance with § 287. *Id.* at 1366-67. By the same token, "an alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287." *Id.* at 1368.

Although the bar is low, J&S has not met its burden of production. It must put TB Holding on notice that its authorized licensee sold unmarked products practicing the patent. *Id.* Yet J&S has not articulated any products sold by TB Holding's licensee it believes are unmarked. Admittedly, TB Holding failed to disclose it had exclusively licensed its patents to North American Machine of Colorado until after the close of fact discovery, which failure was compounded by TB Holding's misstatement in its complaint representing it makes and sells simulated log siding. *See* Dkt. 107 at 4. *Id.* But the Court reopened discovery on whether NAMC was a necessary party, and J&S was aware of NAMC and had at least partially complete copies of the licensing agreements before discovery closed. Id. Once J&S learned TB Holding had licensed its patents to NAMC, it had ample opportunity to identify any unmarked patented articles made or sold by NAMC. It did not do so.

Because J&S has failed to provide TB Holding "adequate, meaningful notice that it contested marking," the Court finds it would be unfairly prejudicial to TB Holding to allow J&S, at nearly the final moment before trial to put TB Holding in a position in which it must scramble to prove that it or its licensees marked embodiments of the asserted patents. *See Intell. Ventures I LLC v. Symantec Corp.,* No. 10-1067-LPS, 2015

**MEMORANDUM DECISION AND ORDER - 15**

WL 294240, at *1 (D. Del. Jan. 21, 2015); *see also SPEX Techs. v. Apricorn, Inc*, No. CV 16-07349JVS(AGRX), 2020 WL 1289546, at *1 (C.D. Cal. Jan. 21, 2020) (citing Fed. R. Civ. P. 37(c)(1). The Court may reconsider this decision if J&S can show that it has sufficiently identified unmarked products that it alleges should have been marked, thus triggering TB Holding's obligation to prove those identified products were properly marked or did not need to be marked. *Cf. Biedermann Techs. GmbH & Co. KG v. K2M, Inc.*, 528 F. Supp. 3d 407, 421, 424 (E.D. Va. 2021).

## C.  J&S's Motions in Limine

### 1.  Motion in Limine No. 1: Non-Party NAMC's Prior License Agreements

J&S first moves to preclude TB Holding from admitting the first and last pages of several license agreements that non-party NAMC entered into with various third parties. First, J&S argues the admission of these incomplete licensing agreements would violate the best-evidence rule because they are duplicates, which are only allowed if the entire agreement is reproduced. Second, it argues, even if the documents satisfied the best-evidence rule, they are irrelevant as course of dealings and highly prejudicial.

TB Holding responds that Ted Baum can authenticate his own signatures, that J&S itself listed the underlying license agreement on its own exhibit list (Ex. 2032), and that J&S should be judicially estopped from arguing the licenses are irrelevant after relying on their relevance to exclude TB Holding's expert's testimony.

The Court will defer ruling on this issue until trial. It is unclear whether TB Holding has ever produced the license agreements in their full form. The exhibits TB Holding seeks to introduce include only the first and last pages of three license

MEMORANDUM DECISION AND ORDER - 16

agreements, and the Court has serious concerns about admitting such incomplete documents. Without the full agreements, J&S cannot meaningfully cross-examine on the terms, and the jury would be left to speculate about their contents.

That said, the Court cannot rule on admissibility without a proper understanding of the purpose for which TB Holding seeks to admit these documents. The Court may allow TB Holding to elicit testimony from Ted Baum regarding his personal knowledge of the license agreements, and J&S may impeach Ted Baum to the extent it believes the license agreements may differ from the draft license agreement presented to J&S (Ex. 2032). The Court will address any further disputes regarding these exhibits as they arise at trial. Accordingly, J&S's first motion in limine is deferred.

### 2. Motions in Limine No. 2: Evidence of J&S's Profits and Sales Prior to 2016.

Patent damages are limited to no more than the six years prior to the filing of the complaint for infringement. 35 U.S.C. § 286. TB Holding filed its complaint in August 2022. Yet TB Holding seeks to introduce evidence of J&S's profit and sales dating back to 2011 to show "J&S's infringement over time" and to show the damages amount it is statutorily allowed to claim is modest compared to its actual damages for the entire infringing period. Dkt. 228 at 3. But a patentee may not introduce evidence of damages to which it is not entitled to lend legitimacy to the reasonableness of its damages calculation. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1321 (Fed. Cir. 2011).

MEMORANDUM DECISION AND ORDER - 17

The Court is equally unpersuaded by TB Holding's argument that it should be allowed to present this evidence to show that strong demand for J&S's simulated log siding led J&S to seek "additional disks to build a second machine that drove later infringement." *See* Dkt. 228 at 3. As TB Holding has pointed out itself, literal patent infringement is a strict-liability tort and therefore "J&S's mental state is irrelevant." *See* Dkt. 224 at 5. Under TB Holding's own theory of its case, why J&S fabricated these additional disks is irrelevant to TB Holding's claims. Accordingly, evidence of J&S's profit and sales prior to 2016 is inadmissible.

### 3. Motion in Limine No. 3: Evidence of J&S's Profits and Sales Related to Grizzly Board.

J and S makes two types of siding with the log attachment it purchased from Ted Baum: Grizzly Board and simulated log siding. TB Holding has only accused J&S's simulated log siding. J&S therefore seeks to preclude TB Holding from introducing evidence or testimony regarding its profits and sales of non-accused siding as irrelevant and unduly prejudicial. TB Holding responds these profits are relevant because they provide a comparison benchmark to J&S's log-siding sales and demonstrate that J&S continued to infringe its patents because its log siding was more in demand and more profitable. But, as just explained, J&S's mental state is irrelevant to TB Holding's claims. Evidence of J&S's profit and sales on non-accused siding is therefore inadmissible; therefore, the Court will grant this motion.

### D. Trial Briefs

In addition to filing motions in limine, the parties have raised several evidentiary issues in their trial briefs, most of which the Court has already addressed. The Court,

MEMORANDUM DECISION AND ORDER - 18

however, has not yet addressed TB Holding's objections to J&S's late deposition designations for Ryan Reed-Baum and its late addition of Mr. Reed-Baum on its amended witness list. The deadline for serving witness lists and deposition designations was March 2, 2026. J&S did not submit deposition designations and did not include Ryan Reed-Baum on its witness list. A week later, on March 9, J&S designated 107 portions of Mr. Reed-Baum's transcript and amended its witness list to add him as a witness. TB Holding objects to the designations and to the addition of Mr. Reed-Baum as a witness.

The Court will not allow J&S late deposition designations because J&S has failed to show good cause justifies its late disclosure or that its late disclosure was harmless. J&S attributes its late designations to the fact that TB Holding did not include Mr. Reed-Baum on its witness list. But TB Holding's decision not to call Mr. Reed-Baum as a witness does not excuse J&S's late designations. A party cannot rely on the opposing party to list or call a particular witness. It was therefore incumbent on J&S to designate Mr. Reed-Baum's deposition testimony in a timely manner if it wished to introduce that testimony.

The Court, however, is inclined to allow J&S to call Mr. Reed-Baum as a live witness. As Mr. Reed-Baum was TB Holding's Rule 30(b)(6) designee, TB Holding cannot claim unfair surprise or prejudice simply because he was identified as a potential witness one week after the deadline. Like any witness, J&S will be limited to questioning Mr. Reed-Baum on issues deemed relevant to this trial, which does not include any of J&S's waived affirmative defenses.

**MEMORANDUM DECISION AND ORDER - 19**

Finally, the Court will not preclude TB Holding from offering J&S's own Quickbook data because J&S was initially unable to extract the information from a zipped file TB Holding timely provided. Once J&S informed TB Holding that it could not extract the data, TB Holding promptly provided the underlying spreadsheets that J&S long has had in its possession. And after J&S expressed further concerns of the data being "voluminous" (Dkt. 219 at 5), TB Holding took the additional step of preparing summaries under FRE 1006 and serving those on March 18, 2026. See Ex. A (reducing purported 600+ pages of information to four). The summaries are of J&S's revenue of its log-siding jobs over specific periods of time relevant to each patent. There is therefore no basis to exclude this information.

## ORDER

**IT IS ORDERED that:**

1. J&S's Omnibus Motions in Limine (220) are **GRANTED in part and DENIED in part**, except for the rulings the Court has deferred.

2. TB Holding's Motions in Limine (224) are **GRANTED in part and DENIED in part**, except for the rulings the Court has deferred.

3. J&S's Motion to Strike TB Holding's Response to J and S's Response to TB Holding's Trial Brief (Dkt. 232) is **DENIED.**

DATED: April 7, 2026



B. Lynn Winmill
U.S. District Court Judge