UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TB HOLDING COMPANY LLC, a Colorado limited liability company,<br><br>          Plaintiff,<br><br>     v.<br><br>J&S SIDING COMPANY, LLC, an Idaho limited liability company,<br><br>          Defendant. | Case No. 4:22-cv-00307-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

TB Holding accuses J&S of infringing three of its patents: US Patent 9,283,604, US Patent 9,732,529, and US Design Patent D602,612. *Am. Compl.*, Dkt. 134. Trial is set to begin in this matter on April 13, 2026. Following a pre-trial conference on April 9, 2026, the Court invited the parties to submit additional briefing regarding several evidentiary issues raised by the parties. A further informal session with counsel was held on April 10, 2026 to discuss these issues.  The Court's ruling is set forth below.

**ANALYSIS**

**A. Certified Copies of the Patent**

In support of its patent infringement case, TB Holding will seek admission of the three patents themselves—the '604 Patent, '529 Patent, and 'D612 Patent. J&S objects to their admission, arguing that TB Holding has not produced certified, self-authenticating

**MEMORANDUM DECISION AND ORDER - 1**

copies from the Patent and Trademark Office, as necessary. Contrary to J&S's argument, it appears that a certification is not required for admission, as courts routinely take judicial notice of filings in the patent office. *See Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 954 n.27 (Fed. Cir. 1993) (taking judicial notice of a patent not part of the record on appeal because it was referred to at oral argument and was publicly accessible); *Hollis v. Comm'r of Soc. Sec.*, 2015 WL 357133, at *19 (E.D. Mich. Jan. 27, 2015) ("The Court can take judicial notice of the patent.").

This stands to reason, as patents can be readily found on the patent office website,[1] and are thus "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). What is more, J&S has not questioned the accuracy of the patents that TB Holding intends to rely on. The Court thus takes judicial notice of the three patents and finds that a foundation for their admission has been established. J&S's objection is overruled.

### B. Disclosure of Utility Patent Damages

TB Holding seeks a reasonable royalty for J&S's alleged infringement of TB Holding's two utility patents. "The reasonable royalty theory of damages ... seeks to compensate the patentee not for lost sales caused by the infringement, but for its lost opportunity to obtain a reasonable royalty that the infringer would have been willing to pay if it had been barred from infringing." *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1334 (Fed. Cir. 2015). A reasonable royalty "may be based upon ... the supposed

---

[1] *See* https://ppubs.uspto.gov/basic/.

**MEMORANDUM DECISION AND ORDER - 2**

result of hypothetical negotiations between the plaintiff and defendant." *Rite–Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995). A factfinder uses the hypothetical negotiation to "attempt to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770 (Fed. Cir. 2014) (internal quotation marks, citation and brackets omitted).

"Because the hypothetical negotiation is a legal construct, not grounded in reality, calculating a reasonable royalty requires assumptions and educated guesswork. Several factors may therefore be considered in determining a reasonable royalty, including any royalties received for licensing the asserted patents, royalty rates for comparable technology, the duration of the patent, the patentee's relationship with the infringer, and any other factors that might warrant higher damages. *See, e.g., Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1109 (Fed. Cir. 1996); *Ga.-Pac., Corp. v. United States Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y.1970); *see also* 2025 AIPLA Model Patent Jury Instruction 10.2.5.3 (listing relevant factors for using the hypothetical negotiation method). The determination is one for the factfinder, to be decided based on the entirety of the evidence. *See Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 517 (Fed. Cir. 1995). Expert testimony may aid in this determination, but it is not required. *See Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381–82 (Fed. Cir. 2003) (citing 35 U.S.C. § 284).

Against this backdrop, J&S argues TB Holding should be precluded from presenting a hypothetical-negotiation theory at trial because it failed to disclose this "new

**MEMORANDUM DECISION AND ORDER - 3**

damages theory." J&S concedes it received TB Holding's *Georgia-Pacific* reasonable royalty opinion on August 9, 2024, through the report of damages expert James Harrington, but contends TB Holding "should have moved for leave to introduce a new damages theory, either requesting leave to file a supplemental expert report to re-open fact discovery" once Mr. Harrington's report was excluded. Dkt. 245 at 3.

But TB Holding is not introducing a new damages theory. Since its initial disclosures, TB Holding has specified that it seeks damages "in no event less than a reasonable royalty[.]" *See* Dkt. 245. And, as J&S acknowledges, TB Holding provided notice that it would be using a hypothetical-negotiation framework through its disclosure of Mr. Harrington's expert report. It now intends to use that same framework – simply without the aid of expert testimony.

At the pre-trial hearing, J&S's counsel insisted only an expert can perform a *Georgia-Pacific* analysis, citing to *Exmark Manufacturing Co. Inc. v. Briggs & Stratton Power Products Group, LLC*, 879 F.3d 1332 (Fed. Cir. 2018). In *Exmark*, the Federal Circuit held that a damages expert performing a *Georgia-Pacific* analysis must tie the applicable factors to the proposed royalty rate. *Id.* at 1350. It did not say only an expert can perform this analysis. To the contrary, the Federal Circuit has otherwise made clear that expert testimony is *not* required for a *Georgia-Pacific* analysis. *See Dow Chem,* 341 F.3d at 1381–82 (vacating district court's denial of damages after court excluded patentee's expert report and directing court on remand to consider "the so-called *Georgia-Pacific* factors in detail, and award such reasonable royalties as the record evidence will support").

**MEMORANDUM DECISION AND ORDER - 4**

Likewise, it is clear that, if TB Holding proves infringement of its utility patents, the law mandates it receive damages "in no event less than a reasonable royalty for the use made of the invention by the infringer[.]" *See* 35 U.S.C. § 284. The Federal Circuit has called this mandate "unequivocal." *Dow Chem.*, 341 F.3d at 1381. And even where a plaintiff's evidence fails to support a specific royalty estimate, the factfinder must still determine what royalty the record supports. *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1327 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015). A factfinder "may award no damages only when the record supports a zero royalty award." *Id*. at 1328.

In short, the exclusion of Mr. Harrington's expert testimony did not require TB Holding to disclose a new damages theory. Nor does the lack of expert testimony foreclose its damages claim. Accordingly, TB Holding may introduce evidence at trial regarding reasonable royalties for its utility patents. *See, e.g., Plexxikon Inc. v. Novartis Pharms. Corp.,* No. 17-CV-04405-HSG, 2021 WL 2577536, at *7 (N.D. Cal. June 23, 2021) (exclusion of a damages expert's report did not preclude the plaintiff from presenting other evidence of damages for the relevant timeframe); *Thorne Rsch., Inc. v. Xymogen*, No. 2:13-CV-784 TS, 2018 WL 1136079, at *4 (D. Utah Feb. 28, 2018) (denying defendant's motion for judgment as a matter of law on damages, "as multiple witnesses touched on a number of the *Georgia–Pacific* factors that the jury may use in determining a reasonable royalty"); *Kaneka Corp. v. SKC Kolon PI, Inc.*, No. CV 11-3397 JGB (RZX), 2015 WL 12696109, at *3 (C.D. Cal. Nov. 5, 2015) (denying

**MEMORANDUM DECISION AND ORDER - 5**

defendant's motion to exclude newly disclosed damage theory on reasonable royalties because such damages "are mandated by law upon a finding of patent infringement").

## C. Admissibility of NAMC's License Agreements

Related to the issue of damages on the utility patents is the admissibility of exhibit number PTX1005, which consists of the first and executed signature pages of sublicensee agreements. TB Holding seeks to admit these pages and exhibit number PTX1004—a form agreement that TB Holding asserts is identical to the missing pages from the executed sublicensee agreements. J&S objects to admission of these exhibits.

To authenticate a document, the proponent need only produce evidence sufficient to support a finding that the document is what it claims to be. FRE 901(a). For a standard form agreement, the proponent can accomplish this by presenting the template agreement, the signature page, and testimony from a party that the standard terms of the template were not modified. In *Elsevier B.V. v. UnitedHealth Group, Inc.*, 784 F.Supp.2d 286, 291-92 (S.D.N.Y. 2011), the court did just this—rejecting an argument contesting authenticity where the proponent submitted a signature page, separately produced pages from a form agreement, and introduced testimony that the signature page was part of the form agreement.

Here, in addition to the signature pages and form agreement, TB Holding intends to offer testimony from its corporate witness, Ted Baum, that the template was standard across all licensees and was not modified. And the standard form agreement that TB Holding seeks to admit, PTX1004, is identical to that which J&S itself has identified as an exhibit. Dkt. 225-1, Ex. 2032. Finally, TB Holding has consistently relied on signature

MEMORANDUM DECISION AND ORDER - 6

pages and witness statements to show that sublicensee agreements existed and represented that these were form agreements. *See* Dkt. 177-7; Dkt. 201-1.

Rule 901(a) is a low bar. *See Am. Fed'n of Musicians of United States & Canada v. Paramount Pictures Corp.*, 903 F.3d 968, 976 (9th Cir. 2018) ("A party need only make a prima facie showing of authenticity so that a reasonable juror could find in favor of authenticity or identification") (internal quotation marks omitted). Under it, a template agreement, signature pages, and testimony that the terms of the agreement were standard and unmodified are sufficient authentication. Thus, pending testimony from Mr. Baum to support TB Holding's assertion that the signature pages were a part of the form agreement, the Court will overrule J&S's objection and admit the signature pages. J&S may cross-examine Mr. Baum on the issue of whether the terms of sublicensee agreements differed, but that testimony will go to the weight of the evidence, not its admission.

The Court would note that in this circumstance, it often instructs the jury along the lines of the following:

> Ladies and Gentlemen, the Court is admitting this exhibit because TB Holding has provided enough evidence, from which you could find that the exhibit is what TB Holding says it is – an accurate recitation of the licensing agreements which had been negotiated and adopted.  However, it is for you to decide whether you are so persuaded that the exhibit reflects the actual terms of the licensing agreements.  If you are so persuaded, you may fully consider the exhibit in your deliberations.  But, if you are not so persuaded, then you should disregard the exhibit and not consider it.

The Court will give that instruction if requested to do so by one of the parties.

**MEMORANDUM DECISION AND ORDER - 7**

### D. Admissibility of Purchase of Log Attachment

The third issue concerns whether J&S's purchase of the log attachment in 2009 from Ted Baum—and the price paid—is relevant to the reasonable royalty calculation. The Court has already granted TB Holding's motion in limine precluding J&S from arguing that it "purchased" the log attachment or had "permission" to use it, finding those arguments are relevant only to J&S's waived affirmative defenses. The Court deferred ruling on whether J&S may offer evidence of the purchase price to inform a hypothetical license negotiation for the reasonable royalty calculation. *See* Dkt. 241 at 10–11.

J&S contends it should be "free to argue that it already paid a reasonable royalty for the use of TB Holding's log attachment when it bought the log attachment from Ted Baum." Dkt. 238 at 6. It maintains that the $8,950 it paid to Ted Baum "is evidence of the going rate in the market as a reasonable lump sum royalty," and because determining damages on a reasonable royalty is an issue of fact, the jury should hear evidence related to J&S's purchase of the log attachment.

For its part, TB Holding "hotly disputes" that J&S made an unfettered "purchase" of the log attachment and instead contends it was a sale subject to a lease. Dkt. 246 at 2. It argues that allowing J&S to introduce evidence that it purchased the attachment outright would amount to an end run around the Court's rulings preventing J&S from presenting evidence or argument that it had "permission" to use the log attachment, which would only confuse the jury and would be unduly prejudicial. The Court finds such concerns could be properly mitigated with an appropriate limiting instruction and clear direction to counsel as to how they can present the evidence to the jury.

**MEMORANDUM DECISION AND ORDER - 8**

The Court, however, finds TB Holding's argument that a patentee's selling price for its own machine has no bearing on the reasonable royalty inquiry more convincing. A reasonable royalty compensates for the value of the infringer's *use* of the patented technology, not the price the patentee chose to charge for a piece of equipment. See *Brumfield, Tr. for Ascent Tr. v. IBG LLC*, 97 F.4th 854, 876 (Fed. Cir. 2024) ("The foundational principle is that the royalty due for patent infringement should be the value of what was taken—the value of the use of the patented technology."). A patentee's commercial pricing reflects manufacturing costs, distribution overhead, and market strategy—not the value of the patent right itself. See *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1334 (Fed. Cir. 2015) (distinguishing reasonable royalty analysis from lost-profits analysis, which focuses on the patentee's selling price and lost sales).

J&S has offered no authority to support its assertion that the price it paid for the attachment is a factor the jury may consider in determining a reasonable lump sum royalty. Additionally, the Court still has concerns that such evidence may only confuse the jury on the issue of damages, even if TB Holding's other concerns can be dealt with by a limiting instruction. Thus, on balance, the Court finds such evidence is more prejudicial than probative and will preclude its admission.

That said, this is a very close question, and the Court will allow J&S to renew its request after TB Holding has completed its case-in-chief.  At that point, the Court will have the full context of TB Holdings evidence on damages, and will allow J&S to make a detailed proffer outside the presence of the jury as to precisely what testimony would be elicited on this issue.  At that point, the Court will be fully informed and able to make a

MEMORANDUM DECISION AND ORDER - 9

final decision.  Counsel are instructed that they are not to discuss the issue in front of the jury until that point in the trial.

### E.  Testimony of Ryan Reed-Baum

The last issue that remains is whether J&S will be allowed to call Ryan Reed-Baum as a witness at trial. In its decision on the parties' motions in limine, the Court precluded J&S from offering its late designations of Ryan Reed-Baum's deposition testimony but indicated it was inclined to allow J&S to call Mr. Reed-Baum as a live witness. *See* Dkt. 241 at 19. After further consideration, the Court stands by that decision and will allow J&S to call Mr. Reed-Baum as a witness. The Court will also grant TB Holding's request to call him as a witness in its case-in-chief. On cross-examination, J&S may exceed the scope of TB Holding's direct examination if it so chooses.

**IT IS SO ORDERED.**

DATED: April 11, 2026

B. Lynn Winmill
U.S. District Court Judge